592 F.2d 1330
 19 Fair Empl.Prac.Cas. 702, 19 Empl. Prac.
Dec. P 9130
Frederick H. HIGH et al., Plaintiffs-Appellees,
and
Equal Employment Opportunity Commission,
Plaintiff-Intervenor, Appellee,
v.
BRANIFF AIRWAYS, INC., Defendant-Appellee,
and
International Association of Machinists and Aerospace
Workers et al., Defendants,
and
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America et al.,
Defendants-Appellants.
 No. 76-4498.
 United States Court of Appeals,
Fifth Circuit.
 April 13, 1979.
 
 Hal K. Gillespie, G. William Baab, Dallas, Tex., for defendants-appellants.
 Les Mendelsohn, San Antonio, Tex., for High, et al.
 John F. Sherlock, III, EEOC, Washington, D.C., for EEOC.
 Terry S. Bickerton, William H. Lemons, III, San Antonio, Tex., for Braniff.
 Chris Dixie, Houston, Tex., for Unions.
 Joseph T. Eddins, Jr., Asst. Gen. Counsel, EEOC, Washington, D.C., Richard E. Tinsman, San Antonio, Tex., Gerald D. Letwin, Abner W. Sibal, Beatrice Rosenberg, Attys., EEOC, Washington, D.C., for plaintiffs-appellees.
 Edward W. Penshorn, San Antonio, Tex., for Int'l Assn. Machinists, Etc., et al.
 Appeal from the United States District Court for the Western District of Texas.
 Before INGRAHAM, GEE and FAY, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 This appeal concerns a small portion only of a massive consent decree entered in settlement of an employment discrimination case. Most of this decree was agreed to on all hands and is not now in dispute. Before us, the parties have advanced numerous contentions, most of which, because of the disposition we make, we need not and perhaps should not consider at this time, since ambiguities that we find ourselves unable to resolve satisfactorily on the present record dictate a remand for further proceedings. Our opinion, being of a tentative and interim nature, is therefore not to be taken as establishing any law of the case whatever, and we shall avoid burdening the reports with a more extensive statement of the case or exposition of our reasoning than is strictly necessary to our present purposes.
 
 
 2
 The decree in question settled a class action originally brought by minority employees against Braniff Airways, Inc. and the International Association of Machinists & Aerospace Workers and its local (Machinists), the union representing one of Braniff's bargaining units, under Title VII and 42 U.S.C. § 1981. The EEOC subsequently was allowed to intervene, and an amended complaint added as defendants the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, its airline division and its local (Teamsters), representing another bargaining unit. Basically, the Machinists' unit comprised mechanics and related crafts. Some of these employees, such as aircraft mechanics, were required to be licensed; some were not. The Teamsters' unit consisted essentially of office workers, including as its highest classification Customer Service (or ticket) Agents, who deal directly with the travelling public. No licenses or special technical skills were required for any member of this unit, except typing capability and the like.
 
 
 3
 Among the provisions of the lengthy decree is its Paragraph 15, entitled "Training," which (with its Appendix H) is the subject of the present dispute and the focus of our inquiry:
 
 
 4
 (a) The Company shall make available to twenty-five (25) members of the Affected Class training for the position of Aircraft Mechanic, selection of such members and respective area of training to be in the Government's sole discretion, in the following manner:
 
 
 5
 (i) each such member of the Affected Class so selected shall be offered an opportunity to participate in specified training offered by the Company, or, at its option, Braniff Educational Systems, Inc. which would qualify a person for employment as an Aircraft Mechanic. In order for such member to be eligible to attend Braniff Educational Systems, Inc., he must be employed by the Company in Dallas, or qualify for transfer to a vacancy in Dallas prior thereto;
 
 
 6
 (ii) upon successful completion of training each such member of the Affected Class shall be eligible for a future vacant Aircraft Mechanic position of the type and/or in the shop for which he has been trained, in accordance with the terms of Paragraph 14 of this Decree;
 
 
 7
 (iii) in the event an Affected Class member does not successfully complete his training, his rights under Paragraph 14 of this Decree are to remain unaffected;
 
 
 8
 (iv) the degree of training necessary to qualify any such person may be flexible and the Company at its discretion may adjust such training as required to take into effect the qualifications any such member may already possess when compared to those of incumbent Aircraft Mechanics presently successfully performing the jobs required.
 
 
 9
 (b) The Company may make available as feasible and encourage such vocational and home study training as may be necessary for minority employees who have not previously had opportunities to acquire experience that would qualify them for transfer or advancement to higher non-licensed positions, or who because of basic educational or verbal deficiencies, may require additional training.
 
 
 10
 (c) The Company shall, after necessary training or familiarization, if any, make available to those individuals listed in Appendix H hereto the jobs at locations specified therein, to commence on the dates indicated in said Appendix. Such jobs may be filled by such individuals notwithstanding the bidding procedures set forth in this Decree or in the applicable collective bargaining agreement.
 
 
 11
 (d) All training provided for in this Paragraph shall be during the employee's off-duty hours, and the Company shall incur no training pay expense or overtime liability to any employee as a result of said training.
 
 
 12
 All parties before the court agreed to the above provisions and to the original Appendix H, reading as follows:
 
 
 13
 This Appendix, as referenced by subparagraph (c) of Paragraph 15 on page 22 of the Decree, will be subsequently provided by the parties and will set forth the names of individuals who are to receive different jobs under said subparagraph and the location, classification and starting date for said jobs.
 
 
 14
 Later in the proceedings a proposed revised Appendix H was filed with the court, which set out seven employees from the Machinists' unit and twenty from the Teamsters' unit who had been selected to receive the training and overriding seniority benefits provided in Paragraph 15 quoted above. It is not seriously disputed that both the number and identities of the twenty Teamsters selected were determined in the course of consultations between the plaintiffs and Braniff, consultations that did not include representatives of the Teamsters Union. Although the Teamsters objected to this revision, it was included in the final decree entered, counsel for the Teamsters specifically noting on its face the union's refusal to consent to this portion of the decree. They now appeal to us this action of the trial court.[1]
 
 
 15
 Their threshold contention, asserted perfunctorily in their brief but more vigorously at oral argument, is that Paragraph 15 refers exclusively to jobs covered by the collective bargaining agreement between Braniff and the Machinists Union. We find the contention not entirely without merit, as the intended coverage of Paragraph 15 is not clear; and though we reach here a provisional conclusion that jobs in the Teamsters' unit are covered, we expressly leave the question open for reconsideration by the district court on remand.
 
 
 16
 As we noted in Eaton v. Courtaulds of North America, Inc., 578 F.2d 87 (5th Cir. 1978), our task in interpreting a consent decree is akin to that posed by construction of a contract. If possible, we are to arrive at its meaning by reference to the language of the decree alone and without resort to extrinsic aids. Nor is much by way of the latter available to us on the present record. Subparagraph (c) itself, the only one explicitly referring to Appendix H, contains a single faint indication that jobs in both bargaining units may be covered by the subparagraph, a reference to bidding procedures "in the Applicable collective bargaining agreement." (emphasis added). Clearly this phrase, unless the product of careless draftsmanship by the parties, is most consistent with an anticipation that either of the collective bargaining agreements might be applicable to a particular job. It can also be read, however, as referring to that of the Machinists only the agreement "applicable" if Paragraph 15 concerns their jobs alone.
 
 
 17
 Subparagraph (b) is impeccably ambiguous. It contains a reference to "higher non-licensed positions," but although only the Machinists hold licensed positions (Appendix A), some of theirs are nonlicensed (Ibid.), and some of these seem to be higher than others. It also contains a reference to training to remove basic educational and verbal deficiencies. Such skills are doubtless most important to persons who meet the public as ticket agents, a Teamster job, but obviously they may be important as well to nonlicensed machinists working in the instrument shop, for example, who presumably must cope with technical manuals, etc.
 
 
 18
 Subparagraph (d) contains no clues apparent to us. Subparagraph (a) obviously concerns only the position of Aircraft Mechanic, a Machinist job, but this is of course not inconsistent with a broader coverage in later matter. Finally, the heading of Paragraph 15, "Training," certainly hints that, like the other paragraphs of the decree, it covers all persons in both bargaining units. If affected persons in the Teamsters' unit are to receive special training benefits under the decree, it must be pursuant to Paragraph 15 or not at all. The decree purports to be a comprehensive settlement of all the matters it concerns, and it therefore seems likely that the claims of under-qualified people in the Teamsters' unit would receive attention somewhere. On the above considerations, we are inclined to believe that subparagraphs (b), (c) and (d) of Paragraph 15 were intended by the parties to apply to Teamster members of the affected class as well as to Machinists, but this does not end our inquiry.
 
 
 19
 Assuming that Teamster jobs and seniority are affected by the latter subparagraphs of Paragraph 15, we must now determine whether the procedure followed by the court below that of imposing on the Teamsters over their objection an expanded Appendix H about which they were not consulted was proper under the provisions of the consent decree Or otherwise. For several reasons, we conclude that it was not proper under the decree.
 
 
 20
 In the first place, the decree was contemplated to be a Consent decree. Obviously, this implies consent given at some point, at least, to all of its significant provisions. The original Appendix H set out above, to which all parties agreed, contemplates that it will be replaced by a more extensive one. We think it plain as well that it contemplates that the new appendix will likewise be the product of agreement, and agreement by all affected parties at that. It says so: the final appendix "will be subsequently provided by the parties." If, as we have tentatively concluded, Paragraph 15 concerns the Teamsters, then certainly they are a party as entitled as any other to participate in "providing" its new and dispositive Appendix H. The original version was a mere agreement to agree; the final one affected in specific and concrete ways the jobs and seniority of people for whom the Teamsters were the bargaining agent.
 
 
 21
 If more be required, we note that while subparagraph (a) put an overall limit on the number and type of Machinist positions to be affected by it, the latter subparagraphs do no such thing. Thus, by a literal reading of these provisions, every job in the Teamsters' bargaining unit was subject to shuffling under them. It is inconceivable to us that Teamsters could have intended to empower Braniff, the plaintiffs, and EEOC to work such a theoretically unlimited fruit-basket turnover in their bargaining unit without further consultation and concurrence by them as to the number, location, or type of jobs to be affected and the individuals to be preferred by Paragraph 15 over other Teamster members, some of them doubtless themselves members of minorities.
 
 
 22
 We are therefore unable to accept the appellees' suggestion that once Teamsters agreed to the original decree with its preliminary Appendix H, matters passed out of their hands, and no further Teamster consultation or consent was required.
 
 
 23
 Nor do we think the revised Appendix H was properly imposed on a nonconsensual basis. Of course, it is entirely appropriate for parties to such arrangements as these to agree on as much as they can and call upon the court to decide the rest. See Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157 (5th Cir. 1978) (appeal pending). When this is properly done, what results is a partially consensual and partially litigated decree. In such an event, however, the litigated portion constitutes a judgment and must stand or fall on appeal like any other. Id. Considering revised Appendix H as such a judgment, we find that it cannot stand.
 
 
 24
 In the first place, its entire context is consensual, the result of a compromise between some but not all of the parties. The record indicates that Braniff simply agreed with the plaintiffs on the number and location of ticket agent jobs that it was willing to make available to minority Teamsters. Next, twenty names were selected on some unspecified basis and matched with the available jobs. There is no indication whatever in the record that these selected people had been more severely discriminated against than others similarly situated and none that all those who had been disadvantaged in the past received Paragraph 15 relief. Such relief as the Appendix H list provides therefore goes both too far and not far enough. It is simply impossible to view it as a conceivable result of Litigation.
 
 
 25
 Nor is any showing made that those on the list are being accorded a "rightful place" on the basis of any individual merit or any discrimination peculiar to them as individuals. None of the issues posed by such authorities as International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251 (1976), or Myers v. Gilman Paper Corp., 544 F.2d 837 (5th Cir.), Cert. denied, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977), appear to have been addressed in any significant way by argument, let alone by proof. In view of this, it is not surprising that the Appendix H relief granted is supported by no findings of fact. As in Pettway, this portion of the decree simply lacks the factual underpinnings necessary for its survival as the independent judgment of the court. It was, in fact, a nonconsensual consent decree. As such, it cannot stand.
 
 
 26
 We see no need, beyond the general indications given above, to delineate for competent counsel or the able trial judge the issues to be addressed on the remand that we must order. To do so would approach the presumptuous and might straitjacket the proceedings in an undesirable manner. Once it is seen that since the matter of Appendix H is a contested one and must be tried out like any other such matter, they are fully as competent as we to set and conduct such a proceeding.
 
 
 27
 Finally, the claim of appellants for attorneys' fees on this appeal cannot be allowed in view of Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).
 
 
 28
 The decree and judgment of the court below is reversed insofar only as it incorporates Paragraph B of the revised Appendix H,[2] and the cause is remanded for further proceedings consistent herewith.
 
 
 29
 REVERSED AND REMANDED.
 
 
 
 [1]
 No appeal has been taken by the Machinists
 
 
 [2]
 Paragraph A concerns Machinist jobs and members only