## STEVEN LEVINE *v.* PLAN AND ZONING COMMISSION OF THE TOWN OF FAIRFIELD (9001)

DUPONT, C. J., SPALLONE and LAVERY, Js.

Argued December 10, 1990—decision released June 12, 1991

*Roy H. Ervin, Sr.,* with whom was *Roy H. Ervin, Jr.,* for the appellant (defendant).

*Lawrence M. Lapine,* with whom, on the brief, was *Christopher R. Bello,* for the appellee (plaintiff).

DUPONT, C. J. This case has a long history, involving two decisions of the defendant town plan and zoning commission of Fairfield (commission), two appeals to the trial court, and two appeals to this court. The present appeal to this court requires a determination of whether the trial court properly sustained the plaintiff's appeal from the disapproval by the commission of plans for a building addition. A resolution of this appeal necessitates a discussion of the history of the case.

In 1981, the plaintiff filed an application with the commission for a special permit to build a ten unit addition on his existing seven unit motel. On February 1, 1983, after a public hearing, the commission met in an executive session and voted to deny the plaintiff's application. The plaintiff appealed from this decision to the trial court pursuant to General Statutes § 8-8 (b). The court, *Meadow, J.,* found that the reasons for denial were not supported by the record and that the denial by the commission of the application was illegal, arbitrary and an abuse of discretion. The court, therefore, rendered a judgment on December 17, 1985, in favor of the plaintiff, sustaining his appeal and directing the commission to approve his application for a special permit to build a ten unit addition. The commission subsequently appealed from that judgment after its petition for certification to appeal had been granted by this court.

While the appeal in this court was pending, the parties drafted a "Stipulation to Amend Judgment" dated March 4, 1986, with the caption "Superior Court." It reads in its entirety as follows: "The plaintiff and the defendant in the above entitled matter hereby agree to amend the judgment entered in the above matter on December 17, 1985, by the *Honorable Frank S. Meadow* by changing the phrase 'Proposed Ten Unit Addition,' referred to therein, to 'Proposed Eight Unit Addition.' " The parties did not file the stipulation in the trial court and never moved there for approval of their settlement. The commission withdrew its appeal that was pending in this court on April 11, 1986.

On June 10, 1987, the commission amended its business zone regulations so that motels were no longer a permitted use in the area. The plaintiff subsequently submitted revised plans to the commission for an eight unit addition to his motel on April 6, 1988. The total square footage in these plans was the same as in the originally proposed ten unit addition submitted to the commission with the plaintiff's application for a special permit in 1981. The commission disapproved these plans on April 28, 1988, following an executive session.

The reasons the commission gave for this disapproval are the subject of the present appeal. The reasons given were that (1) the square footage of the proposed addition was not reduced according to the commission's understanding of the stipulation, (2) the plaintiff had failed to commence and complete the project after the commission's approval within a two year time period as required by the Fairfield Zoning Regulations, and (3) the amended zoning regulations no longer permitted the use of this property as a motel. The plaintiff once again appealed from the commission's action to the trial court. His appeal was again sustained in a judgment rendered by Judge Cocco on January 17, 1990. After this court granted the commission's petition for cer-

tification to appeal, the commission appealed from the trial court's judgment. The questions to be resolved by this appeal arise from whether the trial court was correct in rejecting the reasons given by the commission for its disapproval of the plaintiff's revised plans.

We must first decide whether we are dealing with an appeal from a denial of a special permit or a disapproval of revised plans for an addition to the plaintiff's motel. The answer to this question cuts across the issues to be resolved by this appeal.

The trial court characterized the appeal as an appeal from the denial of a special permit to add eight units to the plaintiff's seven unit motel. The plaintiff in his complaint characterized the appeal as one from "the disapproval of his revised plans," and the relief sought by him was to "sustain the appeal and direct said [commission] to approve the revised plans." Both parties on appeal characterize the action of the commission as a disapproval of revised plans. The commission in its decision stated that it was disapproving revised plans. The plaintiff submitted his revised plans by letter to the commission, enclosing "Site plan and Map," rather than by application for a special permit. We treat the plaintiff's submission to the commission as a revised plan, rather than a new application for a special permit because of the history of the case and because that is the way the parties treated it. Furthermore, the plaintiff did not comply with the requirements for filing an application for a special permit and no public hearing was held as would usually be the case if this were a new application. See § 25.0 of the Fairfield Zoning Regulations.

I

The plaintiff's revised plans were the same as those submitted in 1981, except that the number of units had been reduced from ten to eight. We must first decide

whether the fact that the square footage was not reduced on the revised plans was a reason sufficient for the commission to disapprove the plaintiff's revised plans for an eight unit addition. The resolution of this question depends on whether the stipulation of the parties could be interpreted by the commission, and that, in turn, depends on an analysis of General Statutes § 8-8 (n).

Section 8-8 (n) provides that no appeal taken under subsection (b), which provides for appeals to the Superior Court, "shall be withdrawn and no settlement between the parties to any such appeal shall be effective unless and until a hearing has been held before the trial court and such court has approved such proposed withdrawal or settlement." The statute prohibits "side" or secret settlements by the parties once there has been an appeal to the trial court. It does so by prohibiting settlement except by approval of the court. The purpose of the statute is to ensure that zoning matters can be scrutinized by the public by means of a public record. It is the trial court, not the parties, which must approve settlements of zoning cases.[1]

Here, Judge Meadow directed the commission to approve the plaintiff's application for a special permit for a ten unit addition. No approval of the "settlement" was sought by the parties in the Superior Court and none was granted by the Superior Court. When the case was withdrawn in the Appellate Court, without any modification of the judgment rendered by Judge Meadow, that judgment remained in force. It allowed the plaintiff to build a ten unit addition.

Were it not for the "settlement" of the parties, which caused the defendant to withdraw its appeal in this court, the plaintiff would have been entitled to a build-

---

[1] The Appellate Court is not included in the statute and the statute does not prohibit withdrawals or settlements of appeals pending in it.

ing permit for ten units. The plaintiff would be so entitled because the judgment of the court remained in effect, it not having been modified with the approval of the court as required by General Statutes § 8-8 (n).

We have determined that the subject of this appeal is a reconsideration of revised plans rather than a new application for a special permit. As such, at the time of the second decision of the commission, there was outstanding an approval of the application for a special permit by virtue of the judgment rendered by Judge Meadow. See *Gervasi* v. *Town Plan & Zoning Commission*, 184 Conn. 450, 440 A.2d 163 (1981); *Esposito* v. *Planning Commission*, 6 Conn. App. 34, 502 A.2d 173 (1986).

The trial court, *Cocco, J.,* interpreted the stipulation of the parties as meaning that the judgment by Judge Meadow remained intact except that eight units instead of ten were to be added because the stipulation disturbed nothing else. The dilemma of this case is that if the stipulation can be accorded no effect because it is violative of § 8-8 (n), it should not have been interpreted by the commission or by Judge Cocco. The judgment by Judge Meadow would then prevail pursuant to § 8-8 (n), allowing the plaintiff a permit for a ten unit addition, although he seeks only eight.[2]

We resolve the dilemma by treating the appeal to Judge Cocco, which is the subject of this appeal, as the functional equivalent of a proceeding that was, at least in part, the hearing on, and an approval of, the proposed settlement required by General Statutes § 8-8 (n). Section 8-8 (n) does not contain any time limit on when a hearing thereunder must occur; rather, it prevents any settlement of a zoning appeal from becoming effec-

---

[2] The plaintiff presumably would be prevented from seeking more than an eight unit addition because of the doctrine of equitable estoppel. See *Kimberly-Clark Corporation* v. *Dubno,* 204 Conn. 137, 148, 527 A.2d 679 (1987).

tive until such hearing is held and approval obtained. In order properly to review the proposed settlement under § 8-8 (n), Judge Cocco of necessity had to interpret the stipulation.

The interpretation of the stipulation by the court, that nothing of the original judgment was to be changed except the number of units, should not be disturbed. The plain meaning of the stipulation can lead to no other conclusion.

Even if the appeal before Judge Cocco were not to be treated as a hearing to approve the settlement, the commission should not have disapproved the plaintiff's plans on the ground that the commission's interpretation of the stipulation differed from that of the plaintiff. Because the plaintiff sought only eight units, and he had an outstanding judgment for ten units, the commission was prevented from denying him the lesser number. It was not for the commission to interpret the stipulation. The most the stipulation could accomplish, short of further trial court action, was to prevent the plaintiff from seeking more than eight units because of the principles of equitable estoppel.

II

Since the commission's action of disapproval of the plans must be upheld if any one of its stated reasons is sufficient to support that action; *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* 206 Conn. 554, 538 A.2d 80 (1988); we must next consider the commission's second reason for its disapproval of the plaintiff's plans. The commission decided that the plaintiff had failed to comply with § 25.6 of the Fairfield Zoning Regulations because he did not commence and complete the project after its approval within a two year time period.

The trial court next found that the plaintiff had not violated § 25.6 of the Fairfield Zoning Regulations. The

section provides in pertinent part: "Conditional approval. Approval of an application for a special exception under this section shall constitute approval conditioned upon completion of the proposed development, in accordance with plans as approved within a period of 2 years after approval is given. Approval of the application shall become null and void in the event of failure to complete the proposed development within the 2-year period. Said two year period shall commence twenty days from the date of publication of notice of said decision but if an appeal to the applicable courts is filed within such period the two year period shall commence from the date of the final non-appealable determination of said cause of action."

The commission asserts that the two year period for the completion of the plaintiff's project began on the date the stipulation was signed. The trial court held that, for the purposes of this regulation, the term "approval of an application" should be given its usual meaning, and that the usual meaning could not be expanded to mean approval of a stipulation. In the trial court's view, approval in this case meant approval of the plans, and, this having not yet been given, the time period could not run.

The trial court's interpretation of the regulation would allow the plaintiff to extend the time limit for completion of his project indefinitely by submitting plans at his convenience. If the plaintiff never submitted plans for approval, his special exception or permit would be forever alive, regardless of zoning changes. This interpretation is inconsistent with the plain language and purpose of the regulation, namely, to allow a reasonable period for completion of an approved project as a special exception, in accordance with approved plans.

The trial court did not consider the section of the ordinance expressly dealing with the procedure after appeal. That section states that if "an appeal to the applicable courts is filed [the two year period for completion of the development commences] from the date of the final non-appealable determination of said *cause of action*." (Emphasis added.) There are two possible interpretations here of "the date of the final non-appealable determination of the said cause of action." That date could be either the date the appeal from the first trial court decision was withdrawn or the date of this court's decision in the present appeal from the second trial court decision. We conclude that two year period has not yet commenced because there has not yet been a final nonappealable determination of his cause of action, which will occur upon the publication of this opinion.

The commission filed the withdrawal of its appeal to this court from the original action on April 11, 1986. At that point, there was a final nonappealable determination, namely that of Judge Meadow. Under the regulation, the plaintiff would have had two years from that date to complete his project, if his cause of action had not been resurrected by the disapproval of his second set of plans to the commission, which in turn triggered a second appeal to the Superior Court. Because the plaintiff's second appeal was not from a denial of an application for a new special permit, but from a disapproval of revised plans, his cause of action was still viable.

"A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief." *Wade's Dairy, Inc.* v. *Fairfield,* 181 Conn. 556, 560, 436 A.2d 24 (1980). In *Wade's Dairy,* the plaintiff appealed from a cease and desist order of a zoning enforcement officer that prevented the plaintiff from

processing fruit drinks, and also, in a separate action, appealed from the denial of its application for a variance to process fruit drinks. After both of these appeals had been dismissed, the plaintiff brought a suit for an injunction to prevent the defendant from interfering with its operation of processing fruit drinks. The court held that all of the cases involved the same cause of action because all of them were premised on the plaintiff's claimed right to produce and distribute fruit drinks.

The prior appeal in the present case was premised on the claim that a special permit should issue to build an addition on the plaintiff's motel. The present appeal is premised on the same claim, namely, that the plaintiff's plans to build an addition should not have been disapproved. Since the present appeal is the same cause of action as was involved in the first appeal, there cannot be a final nonappealable determination of it until this court has decided it.[3] We, therefore, hold that the plaintiff was not in violation of § 25.6 because, until this court determines the issues, there is no "final nonappealable determination" of his cause of action. Thus, the commission should not have disapproved of the plaintiff's plans on the basis that he had not complied with § 25.6.

## III

The last reason given by the commission for disapproval of the plaintiff's plans is that a special permit may no longer be given to him because the zone in which his motel is located no longer permits such use. The zone change was effective on June 10, 1987. Judge Cocco, on January 17, 1990, decided this issue on the basis that the stipulation was a contract that could not be abrogated by the town without violating the United

---

[3] The final nonappealable determination date could be extended if further appellate review is accorded by our Supreme Court.

States constitution. The commission claims that because the plaintiff did not allege in his complaint that the amendment of the zoning regulations violated the contracts clause of the United States constitution, the court should not have considered such an argument. The plaintiff does not claim that the town had no power to enact the zoning regulation but that, as applied to him, it was unconstitutional. See *D'Addario* v. *Planning & Zoning Commission*, 25 Conn. App. 137, 593 A.2d 511 (1991). We conclude that we need not reach the constitutional claim of the plaintiff.

General Statutes § 8-2h, effective October 1, 1989, provides that an application that is in conformance with applicable zoning regulations at the time of its filing cannot be disapproved for its failure to comply with a subsequent change in the zoning regulations. In this case, the original application for a special permit was filed in 1981. The revised plans, after the granting of the special permit had been directed by the trial court, were filed on April 6, 1988, and disapproved by the commission on April 28, 1988.

We need not decide whether § 8-2h may be applied retroactively[4] because we conclude that, under the circumstances of this case, it is equitable to enforce the zoning regulations in effect at the time of the original application. *Marmah, Inc.* v. *Greenwich*, 176 Conn. 116, 405 A.2d 63 (1978). Here, the plaintiff claimed that the zone change was directed at him. This is not substantiated in the record but the denial occurred at an executive session at which no notes were kept and from which

[4] *McCallum* v. *Inland Wetlands Commission*, 196 Conn. 218, 223, 492 A.2d 508 (1985), which held that the provisions of a zoning regulation at the time of the decision of a court, rather than at the time of the action of the administrative agency, governs the outcome of an appeal, was effectively overruled by General Statutes §§ 22a-42e and 8-2h. *McCallum* may have some limited application in cases decided by zoning authorities prior to October 1, 1989.

no transcript supplied. Although we have nothing before us as to why the zone change was effected, we do know that the plaintiff had a valid special permit to build an addition on an existing motel in the zone, which predated the zone change. A trial court is not automatically bound to apply zoning regulations as of the time of appeal. Id., 121; see also *Zoning Commission* v. *New Canaan Building Co.,* 146 Conn. 170, 148 A.2d 330 (1959). The equities of this case, particularly the fact that the commission was not dealing with a new application for a special permit but with revised plans, pursuant to an existing permit, are with the plaintiff. We conclude that this last reason for disapproval is not sound.

The judgment sustaining the plaintiff's appeal is affirmed and the case is remanded to the trial court with direction to render judgment directing the defendant to issue a special permit in accordance with the plaintiff's revised plans for an addition of eight units.

In this opinion the other judges concurred.