WILLIMANTIC CAR WASH, INC. *v.* ZONING BOARD
OF APPEALS OF THE TOWN
OF WINDHAM ET AL.
(SC 15991)

Callahan, C. J., and Borden, Berdon, Norcott and Peters, Js.

Argued December 1, 1998—officially released February 23, 1999

*John R. Fitzgerald*, for the appellant (defendant T & G Realty, Inc.).

*James A. Wade*, with whom were *Patricia Campanella* and, on the brief, *Brian R. Smith* and *Carla E. Munroe*, for the appellee (plaintiff).

*Richard S. Cody*, for the appellee (named defendant).

*Christopher J. Smith* filed a brief for the Planning and Zoning Section of the Connecticut Bar Association as amicus curiae.

PETERS, J. Under General Statutes § 8-8 (b), any person aggrieved by a decision of a municipal zoning or planning board has a right to appeal to the Superior Court.[1] Should the parties to such a dispute wish to settle the dispute once such an appeal has been filed, § 8-8 (n) requires that the settlement be approved by the Superior Court after a hearing has been held.[2] The dispositive issue in this case is the nature of the required hearing. Specifically, the parties disagree as to whether (1) a pretrial conference in judicial chambers, or (2) a subsequent hearing in open court on a motion to *enforce* a settlement agreement, constitutes such a hearing. We conclude that neither meets the requirements of the hearing mandated by § 8-8 (n). Accordingly, we reverse the judgment of the trial court enforcing the settlement agreement in this case.

The plaintiff, Willimantic Car Wash, Inc., contests the decision of the zoning board of appeals of the town of Windham (board), one of two defendants in the present case, in which the board reversed a determination by the town's zoning officer and granted T & G Realty, Inc. (T & G), the other defendant, a certificate of zoning compliance (zoning certificate). The zoning certificate would permit T & G's lessee, Putnam Car Wash, Inc., to operate a car wash on T & G's property located in Windham. The plaintiff and Putnam Car Wash are business competitors. As required by law,[3] the board

---

[1] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. . . ."

[2] General Statutes § 8-8 (n) provides: "No appeal taken under subsection (b) of this section shall be withdrawn and no settlement between the parties to any such appeal shall be effective unless and until a hearing has been held before the Superior Court and such court has approved such proposed withdrawal or settlement."

[3] General Statutes § 8-7 provides in relevant part: "An appeal may be taken to the zoning board of appeals by any person aggrieved or by any officer,

held a public hearing before rendering its decision granting a zoning certificate to T & G.

The plaintiff appealed to the Superior Court from the board's decision, asserting, among other things, claims of unfair competition, lack of due process and environmental harm. The trial court, *Hon. Joseph F. Dannehy*, judge trial referee, held pretrial settlement discussions with representatives of the plaintiff, T & G and Putnam Car Wash. The board was represented at the first of those conferences, but did not participate thereafter. The representatives of the plaintiff, T & G and Putnam Car Wash subsequently met with and reported to the court, *Dannehy, J.*, that they had reached a settlement agreement privately, pursuant to which the owner of Putnam Car Wash agreed to pay $50,000 to the plaintiff and the plaintiff agreed to withdraw its zoning appeal. Judge Dannehy canvassed everyone present.[4] Although all agreed that a settlement had been reached on stipulated terms, the agreement was not placed on the record because no court reporter was then available. Approximately one month later, the owner of Putnam Car Wash attempted to withdraw from the settlement.

The plaintiff moved to enforce the settlement and, after a hearing on the motion, the trial court, *Martin, J.*, decided that the settlement was enforceable, granted the plaintiff's motion and rendered judgment accordingly. T & G appealed from the trial court's judgment to the Appellate Court.[5]

department, board or bureau of any municipality aggrieved . . . . Such board shall, within the period of time permitted under section 8-7d, hear such appeal and give due notice thereof to the parties. . . . At such hearing any party may appear in person and may be represented by agent or by attorney. . . ."

[4] Present at the meeting were the attorney for the plaintiff, an officer of the plaintiff, the attorney for T & G and the owner of Putnam Car Wash.

[5] T & G properly filed its appeal in the Appellate Court; we then transferred the appeal to this court pursuant to Practice Book § 65-1, formerly § 4023, and General Statutes § 51-199 (c). Prior to the transfer, the Appellate Court,

On appeal, T & G raises four challenges to the decision of the trial court, *Martin, J.* T & G claims that the trial court, *Martin, J.*, improperly held the settlement to be enforceable because: (1) the trial court, *Dannehy, J.*, never held a hearing on the settlement, as required by § 8-8 (n); (2) the court, *Dannehy, J.*, did not have authority under § 8-8 (*l*) to approve a zoning appeal settlement involving monetary consideration;[6] (3) T & G never agreed to the settlement; and (4) the settlement was not clear and unambiguous owing to its omission of significant terms and conditions. Because we agree with T & G's contention that the failure to hold a hearing on the settlement, as required by § 8-8 (n), left the settlement unenforceable, we do not reach the other claims.

The plaintiff appealed to the Superior Court from the board's decision pursuant to § 8-8 (b).[7] Section 8-8 (n) requires that no such appeal "shall be withdrawn and no settlement between the parties to any such appeal shall be effective unless and until a hearing has been held before the Superior Court and such court has approved such proposed withdrawal or settlement." T & G contends that the alleged settlement agreement

sua sponte, ordered the parties to provide arguments on the question of whether a court in a zoning appeal lacks authority under § 8-8 (*l*) to award money damages.

The Appellate Court also granted permission to the Planning and Zoning Section of the Connecticut Bar Association to file an amicus curiae brief. The amicus curiae argues that the Superior Court is authorized to approve settlements involving monetary consideration that resolve land use appeals taken pursuant to § 8-8.

[6] General Statutes § 8-8 (*l*) provides: "The court, after a hearing thereon, may reverse or affirm, wholly or partly, or may modify or revise the decision appealed from. If a particular board action is required by law, the court, on sustaining the appeal, may render a judgment that modifies the board decision or orders the particular board action. In an appeal from an action of a planning commission taken under section 8-29, the court may also reassess any damages or benefits awarded by the commission. Costs shall be allowed against the board if the decision appealed from is reversed, affirmed in part, modified or revised."

[7] See footnote 1 of this opinion.

was not enforceable because the trial court did not hold the hearing on the settlement that the statute requires.

The parties do not dispute the finding of the trial court, *Martin, J.*, that the trial court, *Dannehy, J.*, never held the required hearing before approving the settlement agreement. The plaintiff asserts, however, that the hearing requirement was fulfilled because either of two proceedings can be considered the functional equivalent of the required hearing. The plaintiff maintains that the pretrial conference before Judge Dannehy served as the requisite hearing because the plaintiff and one of the defendants, T & G, were present and consented to the agreement, and the other defendant, the board, had chosen not to take part in pretrial conferences subsequent to the initial meeting. Alternatively, the plaintiff contends that the hearing before the trial court, *Martin, J.*, on the present motion to *enforce* the settlement was the functional equivalent of the required hearing, because all the parties were then present and the settlement agreement was analyzed thoroughly. We disagree with both arguments.

I

STATUTORY POLICY

Section 8-8 (n) does not specify the nature of the hearing that it requires. We begin, therefore, by considering the term "hearing" according to its common, generally understood meaning. See General Statutes § 1-1 (a).[8] We consistently have acknowledged the definition of a hearing provided in Black's Law Dictionary, as "[a] proceeding of relative formality . . . generally public, with definite issues of fact or of law to be tried, in

---

[8] General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

which witnesses are heard and evidence presented,"[9] and in which parties to a dispute have a right to be heard. Black's Law Dictionary (6th Ed. 1990); see *Herman* v. *Division of Special Revenue*, 193 Conn. 379, 383, 477 A.2d 119 (1984); *Rybinski* v. *State Employees' Retirement Commission*, 173 Conn. 462, 469–70, 378 A.2d 547 (1977); see also *Trost* v. *Conservation Commission*, 242 Conn. 335, 336, 340, 698 A.2d 832 (1997) (construing same language of § 8-8 [n] in General Statutes § 22a-43 [c]).

At the same time, the term "hearing" leaves room for flexibility in responding to variations in the required due process. Not all situations call for the same level of procedural safeguards. *Bartlett* v. *Krause*, 209 Conn. 352, 376, 551 A.2d 710 (1988), quoting H. Friendly, "Some Kind of Hearing," 123 U. Pa. L. Rev. 1267, 1270 (1975), observing that the term "hearing," is "a verbal coat of many colors." The role of the hearing required in the present circumstances is to respect and enforce the overall statutory scheme governing the zoning and planning process.

Hearings feature prominently in the zoning process because land use decisions are quintessentially decisions impacting the public. See *Couch* v. *Zoning Commission*, 141 Conn. 349, 356–57, 106 A.2d 173 (1954) (observing that "the alteration of zonal boundaries may seriously affect the property rights of those owning land within or near the area involved"). Zoning regulation represents the common decision of the people "to serve the common social and economic needs . . . for their mutual advantage and welfare . . . ." 1 E. Yokley, Zoning Law and Practice (4th Ed. 1978) § 2-1, p. 15. The statute authorizing local zoning regulation, the gist of which is that zoning regulations must promote the public welfare and be expressive of a comprehensive plan,

---

[9] A statutory requirement for a hearing does not, however, always require the presentation of evidence. No such issue has been raised in this case.

reflects this community of purpose.[10] See *Couch* v. *Zoning Commission,* supra, 353–54; *Fairlawns Cemetery Assn., Inc.* v. *Zoning Commission,* 138 Conn. 434, 439, 86 A.2d 74 (1952).

Because of the public impact of land use decisions, Connecticut's governing statutory scheme promotes public participation in such decision making, and particularly provides for public hearings with substantial procedural safeguards. We have recognized that, "[h]earings play an essential role in the scheme of zoning and in its development. 1 Yokley, Zoning Law & Practice (2d Ed.) p. 267. They furnish a method of showing to the commission the real effect of the proposed change upon the social and economic life of the community. Id., p. 268. Hearings likewise provide the necessary forum for those whose properties will be affected by a change to register their approval or disapproval and to state the reasons therefor." *Couch* v. *Zoning Commission,* supra, 141 Conn. 357. Thus, a municipality must hold a public hearing with specified procedural protections before establishing zoning regulations authorized by General Statutes § 8-2;[11] and a local zoning board of appeals reviewing the decision of a municipal

[10] General Statutes § 8-2 requires that zoning and planning regulations be "made in accordance with a comprehensive plan" and be designed to lessen congestion in the streets, secure public safety, promote health and the general welfare, provide adequate light and air, prevent overcrowding, facilitate adequate provision of public requirements such as transportation, water, sewerage, schools and parks, and promote economic diversity in housing, including housing for low and moderate income households, among other purposes.

[11] See General Statutes § 8-3, which provides in relevant part: "(a) Such zoning commission shall provide for the manner in which regulations under section 8-2 and the boundaries of zoning districts shall be respectively established or changed. No such regulation or boundary shall become effective or be established or changed until after a public hearing in relation thereto, held by a majority of the members of the zoning commission or a committee thereof appointed for that purpose consisting of at least five members, at which parties in interest and citizens shall have an opportunity to be heard. . . ."

zoning officer must hold an open hearing, in order to "afford an opportunity to interested parties to make known their views and to enable the board to be guided by them." *Kleinsmith* v. *Planning & Zoning Commission*, 157 Conn. 303, 311, 254 A.2d 486 (1968); see General Statutes § 8-7.[12] The statutory scheme provides for substantial procedural protections at the latter hearing, including notice requirements,[13] time limits for commencing the hearing and for rendering all decisions, and requirements that a record be made.[14] Zoning decisions

[12] General Statutes § 8-7 provides in relevant part: "An appeal may be taken to the zoning board of appeals by any person aggrieved or by any officer, department, board or bureau of any municipality aggrieved and shall be taken within such time as is prescribed by a rule adopted by said board, or, if no such rule is adopted by the board, within thirty days, by filing with the zoning commission or the officer from whom the appeal has been taken and with said board a notice of appeal specifying the grounds thereof. . . . Such board shall, within the period of time permitted under section 8-7d, hear such appeal and give due notice thereof to the parties. Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before such hearing. In addition to such notice, such board may, by regulation, provide for notice by mail to persons who are owners of land which is adjacent to the land which is the subject of the hearing. At such hearing any party may appear in person and may be represented by agent or by attorney. . . ."

[13] There has been no claim in this case that § 8-8 (n) requires notice before a public hearing on a proposed settlement may be held.

[14] For example, General Statutes § 8-7a provides: "The zoning commission, planning commission, planning and zoning commission and zoning board of appeals shall call in a competent stenographer to take the evidence, or shall cause the evidence to be recorded by a sound-recording device, in each hearing before such commission or board in which the right of appeal lies to the Superior Court."

General Statutes § 8-7b provides: "Whenever a zoning board of appeals has before it for consideration an application for a variance in the use of property any portion of which lies within five hundred feet of a contiguous municipality within the state, such board shall, at least one week prior to the hearing thereon, notify the clerk of such municipality, in writing, of the fact of such application and of the date, time and place fixed by it for such hearing."

General Statutes § 8-7d provides in relevant part: "(a) Except as provided in subsection (b) of this section, in all matters wherein a formal petition,

made by local entities without holding a required hearing have been held to be void. See *Vose* v. *Planning & Zoning Commission*, 171 Conn. 480, 486, 370 A.2d 1026 (1976) (plan of resubdivision); *State ex rel. Brodie* v. *Powers*, 168 Conn. 512, 514, 362 A.2d 884 (1975) (amendment of zoning regulations).

The Appellate Court has recognized the policy of protecting the public interest by holding open hearings prior to Superior Court approval of a settlement of a land use appeal. *Levine* v. *Plan & Zoning Commission*, 25 Conn. App. 199, 203, 594 A.2d 9 (1991); *Sendak* v. *Planning & Zoning Commission*, 7 Conn. App. 238,

application, request or appeal must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals under this chapter and a hearing is required on such petition, application, request or appeal, such hearing shall commence within sixty-five days after receipt of such petition, application, request or appeal and shall be completed within thirty days after such hearing commences. All decisions on such matters shall be rendered within sixty-five days after completion of such hearing. The petitioner or applicant may consent to one or more extensions of any period specified in this subsection, provided the total extension of any such period shall not be for longer than the original period as specified in this subsection, or may withdraw such petition, application, request or appeal. . . ."

General Statutes § 8-7e provides: "The zoning board of appeals of any municipality shall notify the clerk of any adjoining municipality of the pendency of any application or request concerning any project on any site in which: (1) Any portion of the property affected by a decision of such zoning board of appeals is within five hundred feet of the boundary of the adjoining municipality; (2) a significant portion of the traffic to the completed project on the site will use streets within the adjoining municipality to enter or exit the site; (3) a significant portion of the sewer or water drainage from the project on the site will flow through and significantly impact the drainage or sewerage system within the adjoining municipality; or (4) water runoff from the improved site will impact streets or other municipal or private property within the adjoining municipality. Such notice shall be made by certified mail, return receipt requested, and shall be mailed within seven days of the date of receipt of the application or request. No hearing may be conducted on any application or request unless the adjoining municipality has received the notice required under this section. Such adjoining municipality may, through a representative, appear and be heard at any hearing on any such application or request." See also General Statutes § 8-7.

243 & n.1, 508 A.2d 781 (1986). The court has explained: "The purpose of the statute is to ensure that zoning matters can be scrutinized by the public by means of a public record." *Levine* v. *Plan & Zoning Commission*, supra, 203. The requirements of a hearing and of court approval serve to protect the integrity of the land use planning process by prohibiting side or secret settlements by parties once there has been an appeal to the Superior Court. Id.; *Sendak* v. *Planning & Zoning Commission*, supra, 243 and n.1.[15] If, after appealing to the Superior Court, the parties could settle their dispute without the participation of the board and without a public hearing with formal procedural protections, the underlying statutory policy of protecting the public interest would be at risk.[16]

## II

## PRETRIAL CONFERENCE

In the present case, the plaintiff argues that the pretrial conference, at which T & G, the plaintiff and Putnam Car Wash reported their settlement and its terms to Judge Dannehy, could constitute the hearing mandated by § 8-8 (n). We disagree.

The trial court, *Martin, J.,* found the settlement agreement enforceable, despite the failure to hold an

[15] In *Sendak*, the Appellate Court observed that in some situations " 'the propriety of the conduct' " of a local commission may be questionable, and that without the safeguards of the legislative enactment that became § 8-8 (n), an initially unsuccessful applicant, on appeal to the Superior Court, could abuse the entire process by collusively stipulating with the board to a judgment in the applicant's favor and thereby evade effective scrutiny by potentially aggrieved neighbors. *Sendak* v. *Planning & Zoning Commission*, supra, 7 Conn. App. 243 and n.1.

[16] The legislative history of § 8-8 (n) reflects this policy. It indicates that the requirement of court approval was designed to guard against surreptitious dealing between zoning boards and applicants, to avoid frivolous appeals initiated for "leverage," and to ensure that settlements are fair. 27 H.R. Proc., Pt. 10, 1984 Sess., pp. 3780–81, remarks of Representative Richard D. Tulisano.

antecedent hearing, because all the participants in the pretrial meeting, including T & G's duly authorized representatives, had agreed to the settlement. The court reasoned that a court may enforce an oral agreement made by the parties or their duly authorized representatives. Because this case is a zoning appeal, however, courts have the additional mandate to ensure that the public interest is protected. Thus, despite any congruence of minds among the litigants, we cannot ignore the statutory directive that the trial court must hold a hearing before the settlement becomes effective.

The pretrial conference, itself, did not constitute the hearing mandated by § 8-8 (n). As a matter of fact, one of the defendants, the board, was not present at the hearing. Although on appeal to this court, the board subsequently supported the view that the pretrial conference was a hearing, it is possible both here and in other cases that a board may well decline to participate in pretrial conference discussions, expecting, with good reason, that if a settlement were reached, a public hearing on the settlement would follow. It is undisputed that the conference was not open to the public. Under these circumstances, as a matter of law, the pretrial conference failed to protect the public interest that the statutory scheme is designed to protect.

Furthermore, there is no indication that the pretrial conference had the basic procedural protections of the hearing that § 8-8 (n) requires. No record was made of the pretrial meeting. Indeed, the present dispute over the existence of an agreement arose at least partly because of the lack of such a record. Moreover, there is no indication of other formal protections, such as the parties' right to present evidence or to confront and cross-examine witnesses. In light of the underlying goal of protecting the public interest, we conclude that the pretrial conference was not the hearing required by § 8-8 (n).

## III

## ENFORCEMENT HEARING

The plaintiff asserts alternatively that the trial court hearing before Judge Martin, on the present motion to enforce the alleged agreement, fulfilled the hearing requirement. This argument also fails. An enforcement hearing subsequent to a settlement complies neither with the text of § 8-8 (n) nor with the public policy reflected by the statute.

Section 8-8 (n) mandates that "no settlement between the parties . . . shall be effective unless and until a hearing has been held before the Superior Court." Although the hearing on the enforcement motion may have afforded formal procedural protections, the issues before the trial court on the motion to enforce a previous settlement were not the same as those involved in evaluating whether to approve a proposed settlement implicating the public interest.

The plaintiff argues that the hearing was functionally equivalent to a hearing on whether to approve the settlement, because the settlement was thoroughly analyzed and the hearing provided ample opportunity for anyone whose interests might be affected to be heard. The subject matter of the enforcement motion, however, limited the scope of the parties' arguments and the trial court's adjudication. In deciding whether to *enforce* the settlement, the court was required to consider only T & G's arguments that the settlement sought to bind nonparties, that the parties had not reached a definitive agreement, and that the required antecedent hearing had not been held. In approving a settlement affecting the public interest, in contrast, a trial court "must be satisfied of the fairness of the settlement." *Janus Films, Inc.* v. *Miller*, 801 F.2d 578, 582 (2d Cir. 1986).[17]

---

[17] When the House of Representatives considered the statute, Representative Richard D. Tulisano stated that court approval of settlements is required

The difference between the issues of law and fact tried at the enforcement hearing and those pertinent to a hearing on whether to approve the settlement is so significant that one hearing may not be substituted for another. We need not articulate the full range of issues relevant to considering the fairness of a land use settlement. Even if they were in some way addressed at the enforcement hearing, an after-the-fact review is an inadequate substitute for a plenary hearing. Potential representatives of the public interest might well have failed to recognize the importance of contesting a motion to enforce the settlement. Because the statute serves to protect the public in the land use process, it requires a hearing antecedent to judicial approval of a settlement of a zoning appeal.

## IV

## CONCLUSION

We conclude that the trial court, *Martin, J.*, improperly determined that the settlement agreement was enforceable. A contrary holding would circumvent the legislative policy, contained in § 8-8 (n), that a hearing and court approval, antecedent to a settlement becoming effective, provide the best way to preserve the integrity and openness of land use proceedings.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion CALLAHAN, BERDON and NORCOTT, Js., concurred.

BORDEN, J., concurring. I agree with the result reached by, and with most of the reasoning of, the majority opinion. I part company with the majority,

in order to "make sure any settlements are fair, and [have]n't been used as leverage, and [are not] unfair to either party involved." 27 H.R. Proc., Pt. 10, 1984 Sess., p. 3781.

however, on one subsidiary point: the majority's assertion that "[i]n approving a settlement affecting the public interest . . . a trial court 'must be satisfied of the fairness of the settlement.' *Janus Films, Inc.* v. *Miller*, 801 F.2d 578, 582 (2d Cir. 1986)." In my view, it is not necessary on this record to elaborate on the substance of what a trial court must find in order to approve a settlement under General Statutes § 8-8 (n). Furthermore, I am not persuaded either (1) that the principle articulated in the case relied upon by the majority for its assertion applies to the statute at issue in the present case, or (2) that the legislative history cited by the majority necessarily supports the assertion. I decline, therefore, to join that part of the majority opinion.

First, it is not necessary to decide in this case what a court must determine *substantively* in order to approve a settlement of a zoning appeal pursuant to § 8-8 (n). It is clear that the settlement conference held by Judge Dannehy was not a "hearing" required by the statute. It was not a public proceeding and there was no official record of it available to the public.

It is equally clear that the subsequent hearing before Judge Martin could not serve as a surrogate for the hearing required by § 8-8 (n). The hearing before Judge Martin rested on the premise, asserted by the plaintiff who moved for its enforcement, that there had been a "settlement" and, therefore, that the questions before the court were whether: (1) the defendant was correct in its assertion that it never had agreed to the settlement; (2) the settlement was too vague to be enforceable; and (3) the settlement went beyond the jurisdiction of the court in a zoning appeal by awarding damages. Thus, this hearing at its inception rested on the premise of an antecedent settlement. The primary purpose of § 8-8 (n), however, is to require a hearing *before* any settlement is approved by the court. The parties may not collapse the requirement of a hearing under § 8-8 (n)

into a subsequent hearing on the enforcement of a settlement that never was approved in the first place.

This is as far as it is necessary and appropriate to go, in my view, in order to decide this case. This record simply does not present the question of whether, if a proper hearing *is* convened pursuant to § 8-8 (n) to review a proposed settlement, the court must delve into the substance of the settlement in order affirmatively to decide that it is "fair."

Second, the case cited by the majority, *Janus Films, Inc.* v. *Miller*, supra, 801 F.2d 578, does not support the proposition that, in reviewing a settlement under § 8-8 (n), a court must determine that the settlement is fair. As an initial matter, that case does not involve a zoning appeal, and certainly, therefore, does not purport to construe our Connecticut zoning settlement statute.[1] Furthermore, the entire passage from which the language relied on by the majority—"a trial court 'must be satisfied of the fairness of the settlement' "—concerns those situations in which the court is deciding "to approve agreements calling for entry of either *a consent judgment or a settlement judgment* . . . ." (Emphasis added.) *Janus Films, Inc.* v. *Miller*, supra, 582. Those are cases in which the court actually renders a judgment in accordance with the consent or settlement of the parties. This is not such a case, and § 8-8 (n) does not necessarily require similar judicial oversight. Indeed, as the court in *Janus Films, Inc.*, noted, under federal judicial rules a "settlement judgment" is not really what we would under our rules regard as a settlement; it involves, by contrast, a situation in which "the parties have agreed only upon the basic aspect of relief, [and] the judge is obliged to determine the detailed terms of

---

[1] *Janus Films, Inc.* v. *Miller*, supra, 801 F.2d 578, involved an attempt to set aside a "settlement judgment" under the federal rules involving the copyright laws.

the relief and the wording of the judgment." Id. As far as I know, we have no comparable procedure under our rules of practice.

The cases on which *Janus Films, Inc.*, relied for its proposition have no bearing on the scope of inquiry that a Connecticut court must undertake when approving a settlement pursuant to § 8-8 (n). Without belaboring the point, it suffices to say that they all involve cases in which there is either some federal statute, rule or other specific authority requiring the court to adjudicate the fairness of a consent judgment or settlement agreement. See *Adams* v. *Bell*, 711 F.2d 161, 163 (D.C. Cir. 1983) (settlement agreement embodied in consent judgment under Title VII of federal Civil Rights Act); *High* v. *Braniff Airways, Inc.*, 592 F.2d 1330, 1332 (5th Cir. 1979) (consent decree in class action for employment discrimination under Title VII of federal Civil Rights Act); *Pettway* v. *American Cast Iron Pipe Co.*, 576 F.2d 1157, 1165 (5th Cir. 1978) (settlement agreement in class action for employment discrimination under Title VII of federal Civil Rights Act).

The Appellate Court has stated that the "purpose of [§ 8-8 (n)] is to ensure that zoning matters can be scrutinized by the public by means of a public record." *Levine* v. *Plan & Zoning Commission*, 25 Conn. App. 199, 203, 594 A.2d 9 (1991); see also *Sendak* v. *Planning & Zoning Commission*, 7 Conn. App. 238, 243 n.1, 508 A.2d 781 (1986) (purpose of statute is to recognize competing interests, "legitimacy of settlement of zoning cases and the need for judicial scrutiny in order to avoid abuse of the [zoning] process"). Neither of these statements of statutory purpose necessarily suggests an additional obligation on the reviewing court to rule on the substantive fairness of a zoning settlement. So long as the court is satisfied, on the basis of a public hearing on the public record, that the settlement was entered into fairly—a different question from whether

it is substantively fair to all parties[2]—ordinarily the court's task under § 8-8 (n) would be at an end.[3] In zoning cases, generally all parties are represented by counsel, and the parties and their counsel are best situated to decide the merits of their settlements.

Third, I am not persuaded that the scant legislative history[4] of § 8-8 (n) supports the majority's assertion. See footnote 4 of this opinion for the entirety of the relevant portion of that history. It is true that Representative Richard D. Tulisano used language suggestive of

---

[2] Presumably, an inquiry into the substantive fairness of the settlement would require some sort of determination of the strength of the various claims asserted by all of the parties to the zoning appeal. We need not decide in this case whether the legislature had such a searching inquiry in mind when it enacted § 8-8 (n). I would await a case that presents that question, which this case does not.

[3] I would not preclude the possibility of a court declining to approve a settlement that it was convinced was grossly unfair to the public. It is hard to imagine such a scenario accompanied by the concomitant determination that the settlement was entered into fairly, however, because presumably the zoning agency, which ordinarily represents the public, also would have been represented by its counsel, whose job it is to protect the client's interests.

[4] The relevant legislative history provides:

"[Representative Alice V.] Meyer: Mr. Speaker, through you a question to the proponent of the bill.

"Speaker [Irving J.] Stolberg: Please frame your question, madam.

"[Representative] Meyer: I would be interested in knowing what the rationale was behind the refusal to allow a repeal of the suit, without having it go to the court.

"Speaker Stolberg: [Representative] Tulisano, did you get the question, sir?

"[Representative Richard D.] Tulisano: Through you, Mr. Speaker. I think qualifications. The question, why does one need court approval for withdrawal. Is that the question?

"[Representative] Meyer: That is the question.

"Speaker Stolberg: [Representative] Tulisano.

"[Representative] Tulisano: Through you, Mr. Speaker. The purpose for the language in this bill is to assure that there is no surreptitious dealing, either between some members of boards of zoning, zoning boards and applicants, or that some people will take in effect the frivolous appeal, as a title to use up their leverage in order to extradite or to squeeze one to make certain—

"Speaker Stolberg: What was the legal term, [Representative] Tulisano?

"[Representative] Tulisano: I was going to use extort, but I think that might be a little—yes, this is to make sure any settlements are fair, and [have]n't

an inquiry into the substantive fairness of the proposed settlement. 27 H.R. Proc., Pt. 10, 1984 Sess., p. 3781 ("to make sure any settlements are fair, and [have]n't been . . . unfair to either party involved"). The context of those remarks, however, renders them also consistent with an inquiry solely into the procedural fairness of the settlement. That context is as follows: "The purpose for the language in this bill is to assure that there is no surreptitious dealing, either between some members of boards of zoning, zoning boards and applicants, or that some people will take in effect the frivolous appeal, as a title to use . . . their leverage . . . . [T]his is to make sure any settlements are fair, and [have]n't been used as leverage, and unfair to either party involved." Id., p. 3781, remarks of Representative Tulisano. In my view, this legislative history is at best ambiguous regarding whether the trial court must consider the substantive fairness of a settlement under the statute, because the "unfairness" to which Representative Tulisano referred could well have been procedural unfairness.

I readily admit that usually I am quite willing to draw inferences of legislative purpose from legislative history. See, e.g., *Frillici* v. *Westport*, 231 Conn. 418, 429, 650 A.2d 557 (1994). That willingness, however, is tempered by the understanding that the legislative history must be viewed with circumspection. Otherwise, we will give validity to the witticism of Judge Harold Leventhal that "the use of legislative history [is] the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends." *Conroy* v. *Aniskoff*, 507 U.S. 511, 519, 113 S. Ct. 1562, 123 L. Ed. 2d 229 (1993) (Scalia, J., concurring). Although I do not regard the majority's use of this legislative history as falling within that category, I also do not regard the history as particularly illuminating on the question of the substantive scope of the court's inquiry under § 8-8 (n).

been used as leverage, and unfair to either party involved. That's the reason why." 27 H.R. Proc., Pt. 10, 1984 Sess., pp. 3780–81.