ALFRED S. DIETZEL ET AL. *v.* PLANNING COMMISSION OF THE TOWN OF REDDING
(AC 19063)

Foti, Pellegrino and Peters, Js.

Argued April 25—officially released October 3, 2000

*Candace D. Paige,* for the appellants (William A. Oppenheimer et al.).

*Neil R. Marcus,* with whom, on the brief, was *Patricia Curtin Sullivan,* for the appellees (plaintiffs).

*Linda L. Morkan,* with whom, on the brief, was *Michael N. LaVelle,* for the appellee (defendant).

### Opinion

FOTI, J. In this land use appeal, the intervenors, Kathleen Oppenheimer and William Oppenheimer (Oppenheimers), appeal from the denial by the trial court of their motion to open the judgment approving a settlement agreement entered into between the plaintiffs, Alfred S. Dietzel and Sharon L. Dietzel (Dietzels), and the defendant, the planning commission of the town of

Redding (commission). On appeal, the Oppenheimers claim that the court improperly (1) concluded that they lacked standing to participate in the settlement agreement between the Dietzels and the commission under General Statutes §§ 8-8 (n) and 22a-19, and (2) denied their motion to open the judgment after determining that they were parties to the action as intervenors pursuant to § 22a-19. We agree and reverse the decision of the trial court.

The record reveals the following facts that are relevant to our resolution of this appeal. On March 11, 1997, the Dietzels applied to the commission for approval of a four lot subdivision consisting of 14.84 acres of their property located at 9 and 11 Putnam Park Road, in Redding. The commission held public hearings on May 13, 1997, June 10, 1997, June 24, 1997, and July 8, 1997. On August 26, 1997, the commission rendered a decision on the application in which it denied approval of the proposed development of lots one and three, but approved the proposed development of lots two and four, subject to certain modifications and conditions. The commission published notice of that decision in the Redding Pilot on September 4, 1997.

On September 18, 1997, the Dietzels commenced a timely appeal to the Superior Court from the commission's decision. The Dietzels also commenced an action in federal court against the commission and its individual members for violation of their rights under 42 U.S.C. § 1983, claiming damages for an unconstitutional taking of their property. On February 5, 1998, the Oppenheimers filed a motion to intervene in the Superior Court action pursuant to Practice Book § 9-22[1] and General

---

[1] Practice Book § 9-22 provides: "Any motion to cite in or admit new parties must comply with Section 11-1 and state briefly the grounds upon which it is made."

Statutes § 22a-19.[2] On February 10, 1998, the Dietzels filed an objection to the Oppenheimers' motion to intervene.

Although the motion to intervene was scheduled to be heard at short calendar on April 20, 1998, the court decided it on April 15, 1998, when the Dietzels and the commission entered into a settlement agreement, which the court, *Radcliffe, J.*, approved on that same day.[3] Prior to the trial court's approval of the judgment for settlement, it denied the Oppenheimers' motion to intervene.[4] Essentially, the settlement agreement between

[2] General Statutes § 22a-19 provides: "(a) In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.

"(b) In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare."

[3] General Statutes § 8-8 (n) provides: "No appeal under subsection (b) of this section shall be withdrawn and no settlement between the parties to any such appeal shall be effective unless and until a hearing has been held before the Superior Court and such court has approved such proposed withdrawal or settlement."

[4] In granting the motion for judgment in accordance with the settlement agreement entered into between the Dietzels and the commission, the court, *Radcliffe, J.*, stated: "The court also finds that the Oppenheimers are not a party to the action; that they have no standing in this court. The only parties are the Dietzels and the town of Redding; that the commission approved the agreement; that the motion for judgment is granted by agreement; that said matter is withdrawn and filed in the land records."

We note, parenthetically, that the Oppenheimers had requested oral argument on the motion to intervene. Pursuant to Practice Book § 11-18, however,

the Dietzels and the commission provided for approval, subject to certain conditions, of the Dietzels' development plans for their property in exchange for their withdrawal of the two pending actions against the commission in state and federal court.[5] On May 15, 1998, the Oppenheimers filed a motion to open the judgment that approved the settlement agreement. Although the trial court reversed its earlier finding that the Oppenheimers were not intervenors and found that the Oppenheimers had status as intervening parties, the court found that they should not be allowed to participate in the

oral argument is at the discretion of the trial court for that type of motion, and, therefore, the court was not obligated to provide them with an opportunity for oral argument.

[5] The agreement provides in relevant part: "Based on the report by Stuart Reeve of his archeological study and survey of March 10, 1998, (the 'Reeve Report') and subject to the provisions of this Agreement set forth below, the Planning Commission approves a resubdivision of four lots as shown on the PROPOSED ALTERNATIVE 2, SHEET 4 OF 5, Revised 6/13/97 as Approved by The Conservation Commission. Since the Report Showed no archaeological significance in the rear of the proposed lot 1, this lot of 6.100 acres, is approved. Proposed lot 2, consisting of 4.207 acres is approved subject to #4 below. Proposed lot 3 consisting of 2.056 acres is approved. Proposed lot 4 consisting of 2.478 acres, is approved. This application complies with the Redding Subdivision and Inland Wetland Regulations and the Conservation Commission decision in granting the Inland Wetland license. . . ."

We are aware that the trial court, *Radcliffe, J.,* has subsequently found the settlement agreement to be null and void due to the commission's failure to publish notice of its April 14, 1998 decision changing its approval of the Dietzels' subdivision from two lots to four. See *Oppenheimer v. Planning Commission,* Superior Court, judicial district of Danbury, Docket No. 334095 (February 2, 2000). In that case, the trial court further ordered that the commission reconsider the settlement agreement and give proper notice of its decision. Whereupon, if the agreement is properly approved, it must again be presented to the trial court for approval pursuant to § 8-8 (n). The court also noted that the Oppenheimers would be given an opportunity to be heard as intervenors pursuant to § 22a-19 when and if another settlement agreement is presented to the court for approval.

Although we recognize that the trial court's judgment finding the agreement null and void might make the relief granted in the present case unnecessary, we are not prepared to make a finding of mootness at this time. This is due, in part, to the fact that that judgment is currently on appeal (AC 20799) before this court.

proceedings relating to the court's approval of the settlement agreement because the agreement did not contain any environmental issues. Thus, on July 6, 1998, the court denied the Oppenheimers' motion to open.[6] The Oppenheimers now appeal from the court's denial of their motion to open.

## I

The Oppenheimers first claim that the court improperly concluded that they lacked standing to participate

[6] The court stated in relevant part: "All right. I've—I've heard the—the arguments of the parties and I did have an opportunity to review the motion to open—open judgment in this matter and as well as reviewing the agreement between the Dietzels and the Redding planning commission which as [counsel for the Dietzels] pointed out, was signed off on by the planning commission and there was a representative of the planning commission in court that morning.

"Certainly, I'm not questioning the intervenor status of the—the Oppenheimers and any suggestion that they were not parties to the action itself I— I think was incorrect. I'll make a finding that they were parties to the action itself.

"There was also a finding at that time, however, that it was not necessary for them to be a party to the particular agreement involved because under § 22a-19 [b], the standing of an intervening party is strictly limited to raising issues of environmental concern or environmental issues and while those can include not only what we would consider the standard environmental issues but also some issues regarding historic structures and landmarks, there was nothing of that nature impacted by the—the agreement or raised in this—in this particular case.

"Because the agreement did not raise environmental issues there was no standing on behalf of the intervenors to object to the particular settlement which was presented to the court under § 8-8, subsection n, of the General Statutes.

\* \* \*

"The intervention being limited specifically to that purpose, the intervenors should have no standing to object to a—an agreement reasonably entered into between the parties after hearing to resolve a particular case because it's always in the interest of the court as well as the interest of the parties to resolve this—these issues among themselves.

"So, I'll—I'll make a finding that because the intervenors have a—have a derivative role and because environmental issues as they're defined in the—in the statute are not impacted by—by the settlement although they were clearly raised in the—in another appeal, that being Oppenheimer versus the conservation commission of the town of Redding, which is pending

in the settlement agreement entered into between the Dietzels and the commission under §§ 8-8 (n) and 22a-19. We agree.

"Where a claimed error of a nonconstitutional nature is not brought to the attention of the trial court, appellate review of that claim is available only if it constitutes plain error. . . . Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . .

"We have consistently held that plain error review is necessary where the trial court, in its instruction, overlooks a clearly applicable statute . . . *or where the trial court fails to comply with a relevant statute.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Dionne* v. *Markie*, 38 Conn. App. 852, 856–57, 663 A.2d 420 (1995); see also Practice Book § 60-5. In the present case, the court failed to comply with §§ 8-8 (n) and 22a-19.

"Section 22a-19 (a) makes intervention a matter of right once a verified pleading is filed complying with the statute, whether or not those allegations ultimately prove to be unfounded. [Our Supreme Court has] declared that the statute 'permits any person, on the filing of a verified pleading, to intervene in any administrative proceeding for the limited purpose of raising environmental issues.' *Connecticut Fund for the Environment, Inc.* v. *Stamford*, 192 Conn. 247, 248 n.2, 470 A.2d 1214 (1984). In *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 490, 400 A.2d 726 (1978), [the Supreme Court] concluded that one who filed a verified pleading under § 22a-19 (a) became a party to an administrative proceeding upon doing so and had 'statutory

today, that the—that there is no basis for the motion to open judgment dated May 5th and that motion—is denied."

standing to appeal for the limited purpose of raising environmental issues.' 'It is clear that one basic purpose of the act is to give persons standing to bring actions to protect the environment.' *Belford* v. *New Haven*, 170 Conn. 46, 53–54, 364 A.2d 194 (1975)." *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission*, 212 Conn. 727, 734, 563 A.2d 1347 (1989).

"Section 22a-19 does not create an independent right of appeal, but only allows intervention in an appeal otherwise allowed by statute." R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 27.13, p. 62. "All of the parties must consent to a stipulated judgment in a land use appeal made pursuant to section 8-8 [n] or 22a-43 (c) of the General Statutes. The same statutes may also be construed as preventing settlement of appeals without the consent of persons who intervene under section 22a-19 for the limited purpose of raising environmental issues." Id., 131; see also *Willimantic Car Wash, Inc.* v. *Zoning Board of Appeals*, 247 Conn. 732, 743, 724 A.2d 1108 (1999) (hearing mandated by § 8-8 (n) inadequate because, among other things, one party not present at hearing); *Ralto Developers, Inc.* v. *Environmental Impact Commission*, 220 Conn. 54, 60–61, 594 A.2d 981 (1991) (construing § 22a-43 (c), which contains same language as § 8-8 (n), to mean that all parties must consent before settlement can be reached between parties).

"Section 8-8 (n) does not specify the nature of the hearing that it requires. We begin, therefore, by considering the term 'hearing' according to its common, generally understood meaning. See General Statutes § 1-1 (a). We consistently have acknowledged the definition of a hearing provided in Black's Law Dictionary, as '[a] proceeding of relative formality . . . generally public, with definite issues of fact or of law to be tried, in which witnesses are heard and evidence presented,'

and in which parties to a dispute have a right to be heard. Black's Law Dictionary (6th Ed. 1990); see *Herman* v. *Division of Special Revenue*, 193 Conn. 379, 383, 477 A.2d 119 (1984); *Rybinski* v. *State Employees' Retirement Commission*, 173 Conn. 462, 469–70, 378 A.2d 547 (1977); see also *Trost* v. *Conservation Commission*, 242 Conn. 335, 336, 340, 698 A.2d 832 (1997) (construing same language of § 8-8 [n] in General Statutes § 22a-43 [c]).

"At the same time, the term 'hearing' leaves room for flexibility in responding to variations in the required due process. Not all situations call for the same level of procedural safeguards. *Bartlett* v. *Krause*, 209 Conn. 352, 376, 551 A.2d 710 (1988), quoting H. Friendly, 'Some Kind of Hearing,' 123 U. Pa. L. Rev. 1267, 1270 (1975), observing that the term 'hearing,' is 'a verbal coat of many colors.' The role of the hearing required in the present circumstances is to respect and enforce the overall statutory scheme governing the zoning and planning process.

"Hearings feature prominently in the zoning process because land use decisions are quintessentially decisions impacting the public. See *Couch* v. *Zoning Commission*, 141 Conn. 349, 356–57, 106 A.2d 173 (1954) (observing that 'the alteration of zonal boundaries may seriously affect the property rights of those owning land within or near the area involved'). Zoning regulation represents the common decision of the people 'to serve the common social and economic needs . . . for their mutual advantage and welfare . . . .' 1 E. Yokley, Zoning Law and Practice (4th Ed. 1978) § 2-1, p. 15. The statute authorizing local zoning regulation, the gist of which is that zoning regulations must promote the public welfare and be expressive of a comprehensive plan, reflects this community of purpose. See *Couch* v. *Zoning Commission*, supra, 353–54; *Fairlawns Cemetery*

*Assn., Inc.* v. *Zoning Commission,* 138 Conn. 434, 439, 86 A.2d 74 (1952).

"Because of the public impact of land use decisions, Connecticut's governing statutory scheme promotes public participation in such decision making, and particularly provides for public hearings with substantial procedural safeguards. We have recognized that, '[h]earings play an essential role in the scheme of zoning and in its development. 1 Yokley, Zoning Law & Practice (2d Ed.) p. 267. They furnish a method of showing to the commission the real effect of the proposed change upon the social and economic life of the community. Id., p. 268. Hearings likewise provide the necessary forum for those whose properties will be affected by a change to register their approval or disapproval and to state the reasons therefor.' *Couch* v. *Zoning Commission,* supra, 141 Conn. 357. Thus, a municipality must hold a public hearing with specified procedural protections before establishing zoning regulations authorized by General Statutes § 8-2; and a local zoning board of appeals reviewing the decision of a municipal zoning officer must hold an open hearing, in order to 'afford an opportunity to interested parties to make known their views and to enable the board to be guided by them.' *Kleinsmith* v. *Planning & Zoning Commission,* 157 Conn. 303, 311, 254 A.2d 486 (1968); see General Statutes § 8-7. The statutory scheme provides for substantial procedural protections at the latter hearing, including notice requirements, time limits for commencing the hearing and for rendering all decisions, and requirements that a record be made. Zoning decisions made by local entities without holding a required hearing have been held to be void. See *Vose* v. *Planning & Zoning Commission,* 171 Conn. 480, 486, 370 A.2d 1026 (1976) (plan of resubdivision); *State ex rel. Brodie* v. *Powers,* 168 Conn. 512, 514, 362 A.2d 884 (1975) (amendment of zoning regulations).

"The Appellate Court has recognized the policy of protecting the public interest by holding open hearings prior to Superior Court approval of a settlement of a land use appeal. *Levine* v. *Plan & Zoning Commission*, 25 Conn. App. 199, 203, 594 A.2d 9 (1991); *Sendak* v. *Planning & Zoning Commission*, 7 Conn. App. 238, 243 & n. 1, 508 A.2d 781 (1986). The court has explained: 'The purpose of the statute is to ensure that zoning matters can be scrutinized by the public by means of a public record.' *Levine* v. *Plan & Zoning Commission*, supra, 203. The requirements of a hearing and of court approval serve to protect the integrity of the land use planning process by prohibiting side or secret settlements by parties once there has been an appeal to the Superior Court. Id.; *Sendak* v. *Planning & Zoning Commission*, supra, 243 & n.1. If, after appealing to the Superior Court, the parties could settle their dispute without the participation of the board and without a public hearing with formal procedural protections, the underlying statutory policy of protecting the public interest would be at risk." *Willimantic Car Wash, Inc.* v. *Zoning Board of Appeals*, supra, 247 Conn. 737–42.

In the present case, the court denied the Oppenheimers the right to intervene on April 15, 1998. See footnote 4. Although the court reversed itself at the July 6, 1998 hearing on the Oppenheimers' motion to open, it nevertheless did not allow the Oppenheimers to participate in the proceedings regarding the settlement agreement as required by General Statutes § 8-8 (n). See *Trost* v. *Conservation Commission*, supra, 242 Conn. 345 (consent of all parties required prior to trial court's approval of stipulation of judgment that settles land use appeal); *Ralto Developers, Inc.* v. *Environmental Impact Commission*, supra, 220 Conn. 60–61 (same). Indeed, the trial court, contrary to a previous finding by the commission,[7] concluded that the settle-

_____
[7] At its August 26, 1997 meeting, the commission made the following findings regarding the Dietzels' application: "From its review of the complete

ment agreement did not include any environmental concerns, and, therefore, the Oppenheimers had no standing to contest the settlement agreement. Specifically, the court stated: "Because the agreement did not raise environmental issues, there was no standing on behalf of the intervenors to object to the particular settlement which was presented to the court . . . ." We conclude that the court committed plain error because it failed to comply with §§ 8-8 (n) and 22a-19.

The court failed to apply those statutes properly despite the commission's prior finding that the Dietzels' proposed development would have an environmental impact on the surrounding wetlands and watercourses.[8] Indeed, as a threshold matter, we note that a trial court must uphold findings by an administrative agency if those findings are supported by substantial evidence in the record. See *Rogers* v. *Board of Education*, 252 Conn. 753, 768, 749 A.2d 1173 (2000); *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission*, 55 Conn. App. 533, 539, 738 A.2d 1157 (1999).

Here, the record does not establish that the court considered the commission's previous findings. More-

record before it, including testimony at the public hearings, application documentation and reports by its consultants, the planning commission hereby finds as follows: (1) The site which is the subject of this application has documented natural, historical, and archeological features of significance which require protection; (2) The site has extensive wetlands and watercourses which also require protection; (3) Additional data and documentation are required in order to assess the extent and significance of historical and archeological remains on the site which have not yet been investigated, and to determine the impact (if any) of requested additional building sites; and (4) At present the site contains two independent single-family dwellings, as well as established driveways, utilities and outbuildings, all so arranged that a separate lot in full conformity with all town regulations is possible of the dwellings."

[8] Intervention is allowed as "a matter of right once a verified pleading is filed complying with the statute, whether or not those allegations ultimately prove to be unfounded." *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission*, supra, 212 Conn. 734. Here, it is not disputed that the Oppenheimers complied with the statute.

over, nothing in the record establishes that the commission reversed its earlier finding of environmental impact prior to its approval of the settlement agreement. Thus, because the settlement agreement included approval of the development of the same tract of land that was previously the subject of the commission's findings of environmental impact, the Oppenheimers had standing as parties to raise environmental concerns regarding the settlement agreement. See General Statutes §§ 8-8 (n) and 22a-19; *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission*, supra, 212 Conn. 727. Accordingly, we conclude that the court committed plain error when it found that the Oppenheimers lacked standing to participate in the settlement agreement and the stipulation of judgment that followed.

## II

The Oppenheimers next claim that the court improperly denied their motion to open the judgment after it determined that they were parties to the action as intervenors pursuant to § 22a-19. We agree.

"A motion to open and vacate a judgment filed during the four months after which judgment was rendered is addressed to the court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." (Citations omitted; internal quotation marks omitted.) *Acheson* v. *White*, 195 Conn. 211, 214–15, 487 A.2d 197 (1985).

Here, our review of the record leads us to conclude that the court's denial of the Oppenheimers' motion to open was based on reasoning that amounts to plain error. Thus, we conclude that the Oppenheimers have sustained their burden of demonstrating that the court abused its discretion in denying their motion to open.

Accordingly, we reverse the decision of the trial court denying the Oppenheimers' motion to open, and direct that the Oppenheimers be afforded the opportunity to participate in any proceedings, and no settlement agreement shall be approved without the consent of all of the parties. In the event that the judgment is reinstated as the result of the pending appeal (AC 20799), the Oppenheimers' motion to open shall be granted.

The denial of the motion to open is reversed and the case is remanded for further proceedings consistent with the preceding paragraph.

In this opinion the other judges concurred.