[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
The plaintiff, Jude Tallman, brings this appeal from a denial of a proposed seven lot subdivision by the defendant, Newtown Planning and Zoning Commission.
The parcel, which is the subject of the plaintiff's subdivision application, located on Cedar Hill Road, Newtown.
Jude Tallman, owner of the property, proposed the construction of six new an existing dwelling located on proposed lot
Prior to making application to the Newtown Planning and Zoning Commission, the plaintiff sought and obtained approval of the proposal from the Newtown Conservation Commission, acting in its capacity as the wetlands agency of the Town of Newtown.
Approvals were also obtained from the Newtown Department of Health (ROR 10) and the Newtown Fire Marshal (ROR 11).
The Conservation Commission, in its letter of approval (ROR 38), conditioned its grant of a license to conduct a regulated activity on ten specific conditions.
The area of the proposed subdivision was the source of an extensive investigation concerning groundwater contamination, an investigation which resulted in a consent order between the Town of Newtown and the Connecticut Department of Environmental Protection (DEP), in 1995 (ROR 75).
A subsequent investigation and report by SEA Consultants, Inc., of Rocky Hill (ROR 77), found groundwater contamination in the Appleblossom Lane, Cedar Hill Road, Dogwood Terrace area from an unidentified source. CT Page 12929
The report found that groundwater had been contaminated by the presence of tetrachloroethylene (PCE), and that wells servicing certain properties had been impacted.
Remedial measures involving providing public water to the affected areas were undertaken.
In recognition of the identified contamination in the area of the proposed subdivision, the Conservation Commission required, as a condition of granting a license, that monitoring of wells be undertaken by the developer to monitor the existing contamination.
The Commission further insisted that testing be initiated before any construction is undertaken, and that testing continue for one year after all of the proposed dwellings have been constructed. (ROR 38, p. 2.)
The plaintiff's subdivision proposal includes on site septic systems and public water supply in lieu of well water (ROR 39).
The defendant, Newtown Planning and Zoning Commission, devoted portions of four evenings of public hearings to the subdivision application.
The hearings commenced on August 2, 2001 and continued on August 30, 2001, September 20, 2001, and October 4, 2001 (ROR 102).
Questions concerning PCE contamination raised at the initial public hearing prompted the plaintiff to produce expert testimony at the August 30 hearing.
R.G. Slayback, a hydrogeologist associated with Leggette, Brashears and Graham, Inc., testified at the public hearing, and provided a written assessment of the proposed subdivision (ROR 94).
He reviewed the report of SEA Consultants as well as the remediation conducted by the Town of Newtown in conjunction with the Connecticut DEP, including what he referred to as a "plume" containing contaminants (ROR 102, pp. 45-46).
He addressed the issue of blasting activities contemplated on proposed lot 4 and proposed lot 5, and concluded that the blasting activities would have no effect on the "plume" (ROR 94, p. 10).
Also on August 30, the Commission received verified notices of intervention (ROR 72) on behalf of individuals owning property in the CT Page 12930 vicinity of the proposed subdivision.
The notices of intervention were filed pursuant to § 22a-19[1] of the General Statutes.
The notice of intervention stated that blasting and excavation which would take place during the development of the subdivision "will, or are reasonably likely to, unreasonably pollute, impair or destroy the water and other natural resources of the State by enabling (the) plume of contaminated water to expand."
The Commission, at the close of the August 30 hearing, determined the need to engage expert testimony to assist it in evaluating the data presented by the applicant's expert and the conclusions which he reached.
The Commission hired Fuss and O'Neill, Inc. to review the plaintiff's report (ROR 94) and comment upon the hydrogeologic issues associated with blasting and work on the proposed subdivision.
At the September 20, 2001 continuation of the public hearing, Fuss and O'Neill presented a report (ROR 85), which was reviewed by the Commission.
The Commission also heard from a blasting expert engaged by the plaintiff. (ROR 102, pp. 87-90.)
The Commission's designated expert echoed many of the conclusions reached by Leggette, Brashears and Graham, Inc.
Fuss and O'Neill confirmed that blasting, if properly performed on proposed lot 4 and proposed lot S as desired by the plaintiff, would produce no fracturing of rock near the plume of contamination.
They further agreed that "blasting (if properly conducted) will have little or no impact to bedrock fractures beyond a distance of 10 feet from the blast site."
Fuss and O'Neill further described as "unlikely" the prospect that the quantity or quality of water flowing to any existing well would be affected, and endorsed the monitoring activities mandated by the Newtown Wetlands Agency in its approval of a license (ROR 85, p. 2).
The only caveat included in the report was the lack of a "guarantee" of the absence of PCE bearing bedrock in areas not detected by the SEA report (ROR 77), or that the size of the "plume" would increase in the future. CT Page 12931
On October 4, 2001, the public hearing process concluded.
At its December 6, 2001 meeting, the Commission unanimously voted to disapprove the subdivision application, citing six specific reasons for the action (ROR 101).
The Commission made the following finding:
 The commission has weighed these identified facts against the need to protect the public's health, safety and welfare and finds that the proposed conduct is reasonably likely to have the effect of unreasonably polluting, impairing or destroying the public trust in the water of the state. This application violates the provisions of Section 2.03 of the Subdivision Regulations and Sections 8-25 and 22a-19
of the Connecticut General Statutes.
From the decision disapproving his subdivision application, the plaintiff has appealed.
 AGGRIEVEMENT
The plaintiff, Jude Tallman, is the owner of the parcel which he seeks to subdivide, and has been the owner at all times since the date of the filing of the subdivision application.
Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an appeal. Winchester WoodsAssociates v. Planning Zoning Commission, 219 Conn. 303, 307
(1991).
The question of aggrievement is one of fact. Hughes v. Town Planning Zoning Commission, 156 Conn. 505, 508 (1968).
A party claiming to be aggrieved must satisfy a well established two-fold test: (1) he must prove that he has a specific personal and legal interest in the subject matter of the decision, as distinct from a general interest such as concern of all members of the community as a whole, and (2) he must show that his personal and legal interest has been specifically and injuriously affected. Primerica v. Planning ZoningCommission, 211 Conn. 85, 93 (1989); Hall v. Planning Commission,181 Conn. 442, 444 (1980). CT Page 12932
Ownership of the property which is the subject of the application demonstrates a personal and legal interest in the subject matter of the decision. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525,530 (1987).
Denial of the subdivision application demonstrates that the plaintiff's interest has been specifically and injuriously affected.
It is found that the plaintiff, Jude Tallman, is aggrieved by the decision of the Newtown Planning Zoning Commission.
 STANDARD OF SUBDIVISION REVIEW
A municipal planning commission, or combined planning and zoning commission, in determining whether to approve or disapprove a subdivision application, acts in an administrative capacity rather than in a quasi-judicial or legislative capacity. Reed v. Planning ZoningCommission, 208 Conn. 431, 433 (1988). In passing on a proposed subdivision, the commission's action is controlled by the regulations adopted for its guidance. Westport v. Norwalk, 167 Conn. 151, 155
(1974).
A commission has no discretion or choice but to approve a subdivision if it conforms to the regulations. Langbein v. Planning Board,145 Conn. 674, 679 (1958).
The field of subdivision regulation is peculiarly a creature of statute, and a commission may only adopt those regulations authorized by § 8-25 of the General Statutes. Nicoli v. Planning ZoningCommission, 171 Conn. 89, 91 (1976).
In passing on a proposed subdivision plan, a commission is bound by its regulations. RK Development Corporation v. Norwalk, 156 Conn. 369, 375
(1968).
Subdivision regulations must contain known and fixed standards applying to all cases of a like nature. A regulation, like a statute, cannot be too general in its terms. Aunt Hack Ridge Estates, Inc. v. PlanningCommission, 160 Conn. 109, 115-16 (1970).
The criteria contained in the regulation must be reasonably precise as to the subject matter and must be sufficient to guide the commission and to enable those affected to known their rights and obligations. Sonn v.Planning Commission, 172 Conn. 156, 159 (1976). CT Page 12933
Where, as here, the planning and zoning commission has stated the reasons for its decision, a court should not go beyond the reasons provided in the official collective decision. First Hartford RealtyCorporation v. Plan Zoning Commission, 165 Conn. 533, 543 (1973);DeMaria v. Planning Zoning Commission, 159 Conn. 534, 541 (1970).
 APPLICATION CONFORMS TO NEWTOWN SUBDIVISION REGULATIONS
In its resolution rejecting the plaintiff's subdivision application, the only section of the Newtown subdivision regulations cited by the Commission was § 2.03 (ROR 101, p. 4).
Section 2.03 reads: "The land to be subdivided shall be of such character that it can be used for building purposes without danger to public health, safety or welfare. . . ."
The language is virtually identical to the direction contained in General Statutes § 8-25, which requires that "[s]uch regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety. . . ."
Section 2.03 of the Subdivision Regulations, like the similar provision contained in § 8-25, does not contain definite standards or criteria to which a subdivision plan must conform.
Instead, both represent general statements announcing the objectives which subdivision regulations should seek to achieve.
General policy statements regarding compliance with health and safety regulations do not supply a sufficient basis for rejecting a subdivision plan. TLC Development, Inc. v. Planning Zoning Commission,215 Conn. 527, 530 n. 2 (1990).
Subdivision regulations cannot be too general in their terms, but must contain known and fixed standards applying to all similar cases. SowinAssociates v. Planning Zoning Commission, 23 Conn. App. 370, 376
(1990).
Had the Commission based its decision solely upon the alleged failure of the plaintiff to comply with § 2.03 of its regulations, the appeal would be sustained.
As the Commission appeared to concede at trial, the plaintiff's proposal CT Page 12934 complies with all of the specific requirements of the Newtown subdivision regulations.
However, given the notice of intervention filed pursuant to § 22a-19
of the Connecticut General Statutes and the Commission's reliance upon the statute in its rejection of the subdivision proposal, a finding that the proposal complies with all of the applicable subdivision regulations does not end the inquiry.
It is necessary to determine whether an independent basis for rejection exists based upon the public hearing record and the provision of §22a-19, C.G.S.
 COMMISSION PROPERLY CONSIDERED CLAIM RAISED IN VERIFIED NOTICE OF INTERVENTION
Section 22a-19 allows intervention in "any administrative, licensing or other proceeding, and in any judicial review thereof made available by law."
Therefore, the plain and unambiguous language of § 22a-19 permits intervention in proceedings conducted by a municipal planning commission, including the subdivision review process. Red HillCoalition, Inc. v. Town Plan Zoning Commission, 212 Conn. 727, 733
(1989); Paige v. Town Plan Zoning Commission, 235 Conn. 448, 462-63
(1995).
The statute does not, however, expand the jurisdictional authority of the administrative agency before which the environmental issues are presented. Connecticut Fund for the Environment, Inc. v. Stamford,192 Conn. 247, 250 (1984).
Recently, in Nizzardo v. State Traffic Commission, 259 Conn. 131
(2002), the Connecticut Supreme Court considered an attempt to intervene pursuant to § 22a-19, C.G.S., in a proceeding before the State Traffic Commission.
The Commission was considering the issuance of a certificate of operation in connection with a proposed shopping center.
The plaintiffs sought to intervene, citing § 14-311 (d) of the General Statutes, which requires the State Traffic Commission to consider "highway safety, the width and character of the highways affected, the density of the traffic thereon, the character of such traffic. . . ." CT Page 12935
In a 4-3 decision, the majority found that the interveners lacked standing, and that nothing in § 14-311 authorizes the State Traffic Commission to consider the environmental impact of the issuance of a certificate of operation on the air. Nizzardo v. State TrafficCommission, supra, 165-66.
In his concurring and dissenting opinion, Justice Borden perceived no substantive distinction between review of a subdivision application or site plan by a municipal planning and zoning commission and consideration of a certificate of operation by the State Traffic Commission. Nizzardov. State Traffic Commission, supra, 192-93 (Borden, J., concurring and dissenting).
The dissenting opinion, joined by two other members of the court, argued that the majority had overruled Red Hill Coalition, Inc., supra (Red Hill II), and Paige, supra, "sub silentio" because the obligation of a municipal zoning authority to entertain a § 22a-19 claim, was well established prior to Nizzardo. Red Hill Coalition, Inc. v. Town Plan Zoning Commission, supra, 733; Paige v. Town Plan ZoningCommission, supra; Branhaven Plaza, LLC v. Inland Wetlands Commission,251 Conn. 269, 276 n. 9 (1999); Dietzel v. Planning Commission,60 Conn. App. 153 (2000).
It seems difficult to formulate a distinction, for purposes of §22a-19, between a planning and zoning commission sitting in an administrative capacity and the State Traffic Commission passing upon an application for a certificate of operation.
One need not possess an advanced degree in microbiology or environmental science to appreciate the effects of fumes generated by a combustion engine on the quality of breathable air.
Certainly, the density of traffic, of the bumper-to-bumper nature encountered by weekday commuters, does have an impact upon air quality.
However, notwithstanding the analogy grasped by the Nizzardo
dissenters, the majority declined to specifically determine that a municipal planning commission, acting on a subdivision application, could not consider an intervention petition filed pursuant to General Statutes § 22a-19.
This court, therefore, declines to do by implication that which theNizzardo majority has refused to do explicitly.
The defendant, Newtown Planning and Zoning Commission, properly CT Page 12936 considered the claims raised under § 22a-19 pursuant to the notice of intervention.
 THE COMMISSION'S DECISION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE
In order to sustain the decision of the Commission, pursuant to §22a-19, C.G.S., the record must contain substantial evidence to support the Commission's finding that it is "reasonably likely" that the proposed conduct will have the effect of unreasonably polluting, impairing or destroying the public trust in the water of the state (ROR 101).
In challenging an administrative action, the plaintiff has the burden of proving that substantial evidence does not exist in the record, taken as a whole, to support the decision reached. Feinson v. ConservationCommission, 180 Conn. 421, 425 (1980).
The substantial evidence test is similar to the sufficiency of the evidence standard. It must be enough to justify, if the trial went to a jury, the refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. Huck v. Inland Wetlands Watercourses Agency, supra, 541.
It requires a plaintiff to do more than simply show that another decision maker, such as the trial court, would have reached a different conclusion on the facts presented. Samperi v. Inland Wetlands Agency,226 Conn. 579, 587 (1993).
The credibility of witnesses and determinations of factual issues are matters within the province of the agency. Lawrence v. Kozlowski,171 Conn. 705, 708 (1976).
The filing of the notice of intervention required the defendant Commission to evaluate highly technical and complex information concerning the science of hydrogeology and the movement of subsurface waters.
This evaluation of complex technical data is not normally required of an agency sitting in an administrative capacity.
The Commission appropriately recognized the need to supplement its knowledge with expert testimony and engaged Fuss and O'Neill, Inc., consulting engineers, to review the data and the opinions submitted on behalf of the applicant. CT Page 12937
Particular emphasis was placed upon an assessment of the hydrogeologic issues associated with blasting contemplated as part of the construction phase of the proposed subdivision (ROR 85).
The plaintiff's expert concluded that the "plume" of PCE contamination would not be affected by any activity associated with blasting and construction activities (ROR 94, pp. 11-12).
The plaintiff's proposal limited the blasting activities required to proposed lots 4 and 5 and the proposed roadway.
The consulting engineer engaged by the Commission endorsed these conclusions, specifically finding "it is quite unlikely that blasting would reduce the quality or quantity of water available at any individual well." (ROR 85, p. 2.)
Both concluded that blasting activity adjacent to proposed lots 4 and S was not located near the PCE "plume" and that blasting would have little or no impact beyond ten feet from the blast site.
All of the reasons given by the Commission in support of its denial of the subdivision proposal relate to the presence of PCE and the danger of contamination of wells and groundwater based upon the need to blast in connection with the proposed subdivision (ROR 101, pp. 3-4).
Section 22a-19 requires a finding that unreasonable polluting, impairing or destroying of the public trust in the water of the state is "reasonably likely."
"Likely" is defined as "probably or apparently destined . . . seeming like truth, fact or certainty; reasonably to be believed or expected."[2]
Although an administrative agency is not required to believe any witness, even an expert; Manor Development Corporation v. ConservationCommission, 180 Conn. 692, 697 (1980); expert testimony may be required when the question involved goes beyond the ordinary knowledge and experience of the trier of fact. A lay commission acts without substantial evidence and arbitrarily when it relies on its own knowledge and experience concerning technically complex issues, such as pollution control, in disregard of expert testimony. Feinson v. ConservationCommission, supra, 429.
Although Feinson involved an admittedly sparse record and the defendant Commission devoted portions of four evenings to the public hearing process, the expert testimony in both instances was not refuted. CT Page 12938
The Newtown Planning and Zoning Commission heard from two experts, both of whom agreed that the contemplated blasting activities would not impact the PCE "plume," or reduce the quality or quantity of water available to wells in the vicinity.
The language on page 2 of the Fuss and O'Neill report (ROR 85), concerning the lack of a "guarantee" that PCE is not present in areas where it had not been previously detected, and the size of the plume "may increase," does not provide substantial evidence that unreasonable pollution is "reasonably likely" to occur.
Faced with uncontradicted expert testimony from the plaintiff's expert and one of its own choosing, the Commission has the burden of showing evidence in the record to support its decision not to believe the experts — evidence which undermines either the experts' credibility or their ultimate conclusions. Kaufman v. Zoning Commission, 232 Conn. 122,157 (1995).
This it has failed to do.
The appeal of the plaintiff, Jude Tallman, is SUSTAINED, and the Commission is ordered and directed to approve the plaintiff's subdivision application subject to such terms and conditions as the Commission might reasonably prescribe.
The terms and conditions concerning monitoring of blasting activity and wells may be in addition to those imposed by the Newtown Conservation Commission, serving as the municipal wetlands agency. (ROR 38.)
 ___________________ Radcliffe, J.