COMMITTEE TO SAVE GUILFORD SHORELINE,
INC., ET AL. *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN
OF GUILFORD ET AL.

Superior Court, Judicial District of New Haven
File No. CV-03 0483939S

Memorandum filed June 8, 2004

*Evans, Feldman & Boyer*, for the plaintiffs.

*Judith A. Ravel* and *Tyler, Cooper & Alcorn*, for the named defendant.

*Richard Beatty*, for the defendant Sunset Creek Development, LLC.

CORRADINO, J. The defendant Sunset Creek Development, LLC (Sunset), submitted a site plan permit application to the named defendant Guilford planning and zoning commission (commission). The plaintiff, the Committee to Save Guilford Shoreline, Inc., (committee), an environmental advocacy corporation, sought to intervene in the proceedings before the commission. The commission approved the site plan application, and the present appeal of that decision was filed. The first count of the appeal has been brought by the plaintiff committee. The second count is the appeal by four individual property owners whose two properties are represented to be within 100 feet of the activities of Sunset.

Sunset has now moved to dismiss the first count of the plaintiffs' complaint, that portion of the appeal brought by the committee. Sunset claims "there is no basis for standing or any other right of the . . . named plaintiff, Committee to Save Guilford Shoreline Inc., itself to appeal the Commission's decision under either [General Statutes] § 8-8 . . . or pursuant to [General Statutes] § 22a-19 (a)."

Basically, the issue before the court is what right does the Environmental Protection Act of 1971 (act) give a party like the committee to intervene in a hearing such as this and to file an independent appeal? More basically, how is such intervention accomplished? The answer to these questions must, of course, involve an interpretation of the act and more specifically, § 22a-19 (a) of that act. What right to intervene and appeal does § 22a-19 (a) give to an organization like the committee? Section 22a-19 (a) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political

subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." General Statutes § 22a-19 (a).

This statutory subsection must be interpreted in the context of the broader purposes of the act, which our Supreme Court addressed in *Greenwich* v. *Connecticut Transportation Authority*, 166 Conn. 337, 348 A.2d 596 (1974). In *Greenwich*, the court was dealing with General Statutes § 22a-16, but its comments also characterize the role of a litigant proceeding under the rights that § 22a-19 affords. The court said: "It could be argued that because the [act] did not place complete regulatory authority over various forms of pollution within a traditional regulatory agency, but instead conferred standing to sue on a wide variety of agencies, municipalities and other entities, including 'any person,' it cannot be said to establish 'state regulation.' We are of the opinion however, that § *22a-16* is an example of a legislative enactment of what has been described as the expanding doctrine of 'private attorney generals,' who are empowered to institute proceedings to vindicate the public interest. . . . By utilizing this procedure, the legislature expanded the number of potential guardians of the public interest in the environment into the millions, instead of relying exclusively on the limited resources of a particular agency. That this is the case is demonstrated by the provisions of [General Statutes] § *22a-20*, which states, in part, as follows: '[General Statutes §§] *22a-14* to *22a-20*, inclusive, shall be supplementary to existing administrative and regulatory procedures

provided by law and in any action maintained under said sections, the court may remand the parties to such procedures." (Citations omitted; emphasis added.) *Greenwich* v. *Connecticut Transportation Authority*, supra, 343–44; see also *Connecticut Water Co.* v. *Beausoleil*, 204 Conn. 38, 44, 526 A.2d 1329 (1987).

One way to limit broad intervention rights, and more specifically, appellate rights for parties or persons with environmental concerns, is to concentrate an argument on the introductory phrase to § 22a-19 (a), which says that a party has intervention rights "[i]n any administrative, licensing or other proceeding, and in any judicial review thereof made available by law . . . ." General Statutes § 22a-19 (a).What does "by law" mean; does it hark back to ordinary concepts of aggrievement? The Supreme Court addressed this issue in *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 400 A.2d 726 (1978). That case involved an appeal from the action of the defendant commissioner of environmental protection, which approved the application of the defendant George P. Korteweg to construct a floating dock and other structures. The court said that "[t]he threshold issue on this appeal is that of aggrievement." Id., 488. The defendant commissioner argued that Mystic Seaport, Inc., which had intervened in the hearing at the agency level and then sought to appeal, was not aggrieved; in effect, its appeal should be dismissed.

In upholding the trial court's rejection of that argument, the court used language which again recognized the broad purposes of the act, as it had in *Greenwich*. Referring to the commissioner's argument, it noted that he claimed that the act "does not contain any legislative pronouncement that a person can bring an appeal in the first instance, that nowhere does this act declare any person or class of persons 'legislatively aggrieved,' and that there is no legislative statement which allows anyone who intervenes in an administrative hearing to

bring an appeal sua sponte to a court seeking review of an administrative action. The Superior Court held that Mystic Seaport did have standing as a 'legislatively aggrieved' person to maintain its appeal for the limited purpose of raising environmental issues. Although the language of the [act] is in terms of intervention into an existing judicial review of an agency action or the initiation of an independent declaratory judgment or injunctive action, the Superior Court, while recognizing this, noted that Mystic Seaport would not have any existing appeal in which to intervene. This, according to the Superior Court, would thwart the purpose of the [act] which is remedial in nature and, as such, should be liberally construed. One basic purpose of the [act] is to give persons standing to bring actions to protect the environment. . . . A statute is not to be interpreted to thwart its purpose." (Citation omitted.) Id., 489.

The court noted that at the hearing before the commissioner, Mystic Seaport, Inc., had participated and became a party by filing a verified complaint pursuant to § 22a-19. Id. The court went on to say: "Therefore, because Mystic Seaport became a party under § 22a-19 (a) in filing a verified pleading, which set the parameters of the issues it could raise on this appeal, there is no question here that Mystic Seaport can appeal. That appeal, however, is limited to raising environmental issues only, as the Superior Court properly held. Therefore, having become a proper party in the administrative proceeding, Mystic Seaport, Inc., had statutory standing to appeal for the limited purpose of raising environmental issues. Id., 490.[1]

---

[1] The court referred to the broad language in *Belford* v. *New Haven*, 170 Conn. 46, 364 A.2d 194 (1975), which discussed the right of a person to seek declaratory and injunctive relief under § 22a-16. The court in *Belford* said: "The broad language of the act gives any person the right to bring an action for declaratory and equitable relief against pollution. It is clear that one basic purpose of the act is to give persons standing to bring actions to protect the environment . . . . Such standing, however, is conferred only to protect the [environment]." (Citations omitted.) Id., 53–54.

The results reached in the *Greenwich, Belford* v. *New Haven,* 170 Conn. 46, 364 A.2d 194 (1975), and *Mystic Marinelife Aquarium, Inc.*, cases are not surprising given the declaration of policy set forth in General Statutes § 22a-15, which should govern the determination of the viability of any citizen and citizen association legal action brought under §§ 22a-16 and 22a-19. Section 22a-15 says that there is a "public trust" in the natural resources of our state and each person is entitled to their "protection, preservation and enhancement . . . ." General Statutes § 22a-15. The statute goes on to say that: "It is further found and declared that it is in the public interest to provide all persons with an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction." General Statutes § 22a-15.

In *Red Hill Coalition, Inc.* v. *Conservation Commission,* 212 Conn. 710, 563 A.2d 1339 (1989), the court even went beyond the specific holding in *Mystic Marinelife Aquarium, Inc.*, in recognizing the broad rights of intervention and appeal given to citizens and citizens groups under the act. In *Red Hill Coalition, Inc.*, a plaintiff nonprofit corporation and two individual plaintiffs appealed to the Superior Court from the decision by the Glastonbury conservation commission, which granted the defendant applicants an inland wetlands permit for a proposed subdivision. The nonprofit corporate plaintiff had intervened in the proceedings before the commission pursuant to § 22a-19 (a) to raise environmental issues. The two individual plaintiffs had joined the nonprofit's appeal and, it should be noted, not vice versa. See id., 716.

The court addressed the initial issue raised by the defendant commission, which it had framed in terms of an argument contending that "the trial court erred in finding that the plaintiffs had standing to appeal the wetlands issues pursuant to § 22a-19 (a)." Id., 714. The court summarily dismissed the commission's argument

as to the nonprofit corporate plaintiff, saying that "[b]ecause the coalition filed a notice of intervention at the commission hearing in accordance with § 22a-19 (a), it doubtless had statutory standing to appeal from the commission's decision for [the] limited purpose [of environmental issues]." Id., 715; see also *Branhaven Plaza, LLC* v. *Inland Wetlands Commission*, 251 Conn. 269, 276 n.9, 740 A.2d 847 (1999).

The foregoing result is not surprising in light of previous case law, but what is interesting is that although the court in *Red Hill Coalition, Inc.*, found that one of the individual plaintiffs was "traditionally aggrieved," both he and the other plaintiff (not found to be so aggrieved) had "standing" under § 22a-19 (a). See *Red Hill Coalition, Inc.* v. *Conservation Commission*, supra, 212 Conn. 714–16. The court noted that § 22a-19 (a) "allows any person to intervene to raise environmental issues *in an existing review of an agency action* or to initiate an independent declaratory or injunctive action. . . . [The individual plaintiffs] satisfied that section by joining the coalition's appeal to the Superior Court. *They were not statutorily required to file a notice of intervention* before the commission." (Citation omitted; emphasis added.) Id., 716.

*Hyllen-Davey* v. *Plan & Zoning Commission*, 57 Conn. App. 589, 749 A.2d 682, cert. denied, 253 Conn. 926, 754 A.2d 796 (2000), does not limit the broad language of prior appellate precedent but merely makes explicit what was implied in *Red Hill Coalition, Inc.* In *Hyllen-Davey*, the court upheld the dismissal of an appeal by the plaintiff animal rights group from a decision by the defendant commission, which approved a subdivision application. Id., 600. In *Hyllen-Davey*, however, the plaintiff had not intervened in the underlying administrative proceeding and no party to the administrative proceeding had brought an appeal; there was,

of course, no claim that the plaintiff was "tradition-ally aggrieved."[2]

Having now reviewed the relevant appellate case law, the court will attempt to address the claim made in the present motion to dismiss.

In approaching a motion to dismiss, language in the authors' comments to an annotated version of Practice Book § 10-31 must be taken into account: "In deciding a motion to dismiss, allegations of facts in the pleadings are read broadly in favor of the plaintiff, but conclusions of law are not given presumptive validity. *Shay* v. *Rossi*, 253 Conn. 134, [140–41, 749 A.2d 1147 (2000) [overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003)]." W. Horton & K. Knox, 1 Connecticut Practice Series: Practice Book Annotated (2004 Ed.) § 10-31, authors' comments, p. 443. Further, and perhaps more to the point for purposes of the present case: "When the motion to dismiss does not seek to introduce facts outside of the record, it admits all well pleaded facts, the complaint being construed most favorably to the plaintiff." *Duguay* v. *Hopkins*, 191 Conn. 222, 227, [464 A.2d 45] (1983); *Simeone* v. *Federal Press Co.*, 40 Conn. Sup. 173, 485 A.2d 587 (1984)." W. Horton & K. Knox, supra, p. 443.

In this regard, what does the complaint allege here? Paragraph five of the first count alleges that the commit-tee "filed a verified application to become an intervenor in the Permit Application proceeding upon which this proceeding is taken. At no time did the commission act on this application . . . ."

---

[2] *Fort Trumbull Conservancy, LLC* v. *Planning & Zoning Commission*, 266 Conn. 338, 832 A.2d 611 (2003), has no bearing on the issue now before the court. That case simply held that the act in general and § 22a-19 (a) in particular reveal "no language that even arguably suggests that the legislature intended to give environmental intervenors under § 22a-19 the right to appeal from administrative matters that are not otherwise appealable." Id., 361. A trial court would not have subject matter jurisdiction to entertain an appeal in such a situation regardless of whether the appellant had legislatively created standing or met the traditional requirements of standing.

The second count by Richard Wardell and Nancy Wardell and Joseph Nugent and Barbara Nugent appeals the commission's decision and alleges that their properties are "within 100 feet of the proposed activities of Sunset Creek Development . . . as proposed in a certain Site Plan Application filed with [the defendant] Commission," which is the subject of the appeal. These individual plaintiffs are certainly statutorily aggrieved and none of the foregoing factual allegations have been contested by the introduction of facts outside the record.

Applying these guidelines in addressing the motion to dismiss, the court will try to discuss the ambit of § 22a-19 given the facts of the present case.

There is no claim here that the procedural requirements under § 22a-19 for intervention have not been met. Therefore, under prior case law, because the committee "properly filed a notice of intervention at the zoning commission hearing in accordance with § 22a-19 (a) . . . [it had] standing to appeal environmental issues related to the zoning commission's decision." *Keiser* v. *Zoning Commission*, 62 Conn. App. 600, 604, 771 A.2d 959 (2001), quoting *Branhaven Plaza, LLC* v. *Inland Wetlands Commission*, supra, 251 Conn. 276 n.9; see also *Red Hill Coalition, Inc.* v. *Conservation Commission*, supra, 212 Conn. 715; *Mystic Marinelife Aquarium, Inc.* v. *Gill*, supra, 175 Conn. 490. The fact that, if as alleged, the defendant failed to act on the application to intervene cannot deprive the committee of the right to intervene and the concomitant right thereby to appeal on environmental issues. As our Supreme Court noted in *Mystic Marinelife Aquarium, Inc.*, when commenting on § 22a-19: "A statute is not to be interpreted to thwart its purpose." *Mystic Marinelife Aquarium, Inc.* v. *Gill*, supra, 489.

The right to intervene was given to people not meeting traditional standing requirements so that environmental issues could be interjected into hearings before

local zoning officials. The act was passed to protect the public interest of all the people in our state. Cf. General Statutes § 22a-15; *Greenwich* v. *Connecticut Transportation Authority*, supra, 166 Conn. 343–44. Such issues having been interjected into these hearings by the right to intervene, the Superior Court on appeal can better assess possible threats or the lack thereof to the environment. It would stand these purposes of the act on their head if local zoning bodies could thwart them by simply refusing to acknowledge an intervention which is otherwise procedurally valid. See *Connecticut Post Limited Partnership* v. *New Haven City Plan Commission*, Superior Court, judicial district of New Haven, Docket No. CV 99 043627 (July 21, 2000) (*Downey, J.*) (27 Conn. Law Rptr. 621). Finally, even apart from the foregoing, *Red Hill Coalition, Inc.*, suggests that § 22a-19 allows a party such as the plaintiff to intervene at the appeal stage even if there was no prior intervention at the administrative hearing level. Here, an appeal has been filed in the second count by two parties claiming traditional aggrievement—the committee should have the right to intervene at the appeal stage regardless of whether it intervened in the trial court or was allowed to intervene.

Further, as previously noted, § 22a-15 makes clear, and early cases like *Greenwich* and *Mystic Marinelife Aquarium, Inc.*, recognized, that the legislature gave broad rights of intervention in the environmental area. As long as the steps for intervention are taken advantage of, how else can environmental concerns be fully addressed unless a right of appeal is given to the intervenor? The legislative purpose should not be stymied by trying to import traditional notions of standing into the discussion. The intervention mechanism was decided upon for the very purpose of ensuring that the right to raise environmental issues was not compromised by notions of historical standing. An authoritative legal

encyclopedia cites a law review article dealing with this subject; see E. Bullock, "Acid Rain Falls on the Just and the Unjust: Why Standings's Criteria Should Not Be Incorporated Into Intervention of Right," 1990 U. Ill. L. Rev. 605 (1990); and observes: "One commentator [Bullock] has proposed intervention of right as a means of obtaining judicial recognition of environmental claims that might be blocked under standing analysis. [Bullock] argues that for intervention to be an effective alternative to standing it must remain separate from standing and, therefore, courts should not incorporate standing's requirements into intervention. [Bullock] has concluded that intervention, as a tool for the protection of the interests (including public interests) of non-parties, should be a vehicle for getting environmental interests into the courtroom. This can only happen if intervention is free from standings's bar against generalized grievances and its injury in fact requirement." 61B Am. Jur. 2d 441, Pollution Control § 128 (1999). It is further observed that "the fact that standing is chaotic and therefore not exportable support[s] the contention that intervention should be kept separate from standing." Id.

Through § 22a-19, the legislature gave us "intervention of right"; it would be meaningless without the right to appeal under the circumstances afforded by the present case.

The contention that broad intervention rights would raise the specter of lengthy hearings and frivolous appeals is also not persuasive. It is the court's understanding that many of these zoning hearings are, in any event, not known for their brevity even when environmental issues are not interjected. The claim that frivolous appeals may be filed has been raised since the 1930s and with the advent of ameliorative social and public interest legislation, trial courts are well equipped to deal

with unsubstantiated claims of harm to the public interest. In fact, they should be vigilant to do so since frivolous suits would threaten public support for environmental legislation. To say that an environmental intervenor at the hearing stage is not authorized by § 22a-19 (a) to bring an appeal from proceedings that can be appealed by others who may or may not raise environmental issues or raise them effectively, makes the § 22a-15 declaration of policy governing §§ 22a-19 (a) and 22a-16 a misleading frivolity. If such an appeal were not viable, then how can it be said that "all persons" concerned with our natural resources have an "adequate remedy" to require the courts to take account of environmental issues?[3]

---

[3] When the present case was first argued, a paragraph appeared on page 361 of *Fort Trumbull Conservancy, LLC* v. *Planning & Zoning Commission*, 266 Conn. 338, 832 A.2d 611 (2003), containing language to the effect that § 22a-19 (a) does not create an independent right of appeal but only allows intervention in an appeal otherwise allowed by statute. That language merely stands for the proposition that what is otherwise not appealable apart from the intervention question does not somehow become appealable because of the procedural creation of the abstract right to intervene by means of statute. In dicta, however, later on the original page 361, the court said: "Moreover, we conclude that because § 22a-19 does not authorize an environmental intervenor to bring an appeal from proceedings that can be appealed by other parties, it certainly cannot be construed to provide a right of appeal from administrative proceedings that otherwise cannot be appealed." This last sentence offered persuasive support for Sunset's position in the present case. Counsel for the committee, however, after argument, brought to the court's and opposing counsel's attention that this entire paragraph was deleted when, on December 16, 2003, the court amended the opinion by substituting the original page 361 with a replacement page. Consequently, that paragraph is no longer part of the official decision. In the deleted paragraph, the court cited *Dietzel* v. *Planning & Zoning Commission*, 60 Conn. App. 153, 160, 758 A.2d 906 (2000). *Dietzel* does not support Sunset's position. *Dietzel* does mention the independent right of appeal language of a commentator but the opinion refers explicitly to the language of *Mystic Marinelife Aquarium, Inc.*, to the effect that intervention is allowed on the filing of a verified petition and then a right to appeal for the purpose of raising environmental issues. This is on *Dietzel*'s way to holding, as the committee points out, that an intervenor in an appeal has the right to be party to the settlement agreement. In *Dietzel*, the parties who sought to intervene had not intervened in the proceedings before the commission. In the deleted *Fort Trumbull Conservancy, LLC*, paragraph, several trial court

The motion to dismiss count one of the complaint is, therefore, denied.

decisions were cited. The court has read them, and they have not convinced it to change its interpretation of appellate authority.